Alicia D. DOANE

v.

OMNI ROYAL ORLEANS HOTEL

NO. 2016-CA-0144

Court of Appeal of Louisiana,
Fourth Circuit.

OCTOBER 26, 2016

Alicia D. Doane, 1624 Feliciana Street, New Orleans, LA 70117, PLAINTIFF/APPELLANT APPEARING PRO SE

Sherri L. Hutton, Leslie Evalyn Hodge, BROWN SIMS, 1100 Poydras Street, 39th Floor, New Orleans, LA 70163, COUNSEL FOR DEFENDANT/APPELLEE

(Court composed of Judge Paul A. Bonin, Judge Joy Cossich Lobrano, Judge Sandra Cabrina Jenkins)

## JUDGE SANDRA CABRINA JENKINS

This is an appeal from an August 21, 2015 judgment of the worker's compensation judge ("WCJ") finding that appellee/employer, Omni Royal Orleans Hotel ("Omni"), satisfied its burden of proof at trial that appellant/employee, Alicia Doane, was no longer entitled to payment of supplemental earnings benefits ("SEBs") because she was capable of earning greater than 90 percent of her pre-accident wage. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 9, 2010, Ms. Doane was injured in an accident while she was in the course and scope of her employment as a cook in the kitchen at the Omni in New Orleans. Ms. Doane reported that a large tray of meat fell from a cart and hit her head, causing her to fall backward and strike her head on the concrete floor, losing consciousness. At the emergency room, Ms. Doane complained of headaches, dizziness, nausea, and photophobia. CT scans of her brain/head and cervical spine were normal.

Ms. Doane was initially treated by a neurologist, Dr. Charles Fiore, who diagnosed Ms. Doane as suffering from a concussion resulting from the accident. Dr.

Fiore described Ms. Doane's head injury as "relatively minor," and reported that he expected Ms. Doane to reach maximum medical improvement within four [2]months of the accident. On November 9, 2010, Omni began paying total temporary disability ("TTD") benefits to Ms. Doane.

In June 2011, Ms. Doane reported to Dr. Fiore that she was feeling "much, much better." Dr. Fiore then released Ms. Doane to light duty work, subject to certain restrictions such as working no more than 30 hours per week, and taking breaks and unscheduled absences. Ms. Doane returned to work at the Omni in June 2011, working at an omelet station three days per week with eight-hour days. As a result of her return to work, Omni terminated Ms. Doane's TTD payments on June 10, 2011. On or about October 14, 2011, Ms. Doane left her employment at Omni, where she had been earning $12.30 per hour.

On October 25, 2011, Ms. Doane filed a Disputed Claim for Compensation with the Office of Workers' Compensation. Ms. Doane disputed Omni's calculation of her average weekly wage and her disability status. She also sought penalties and attorney's fees for failure to provide benefits.

In January 2012, Ms. Doane began working as an independent contractor for Innovative Hospitality Services ("IHS"), earning $11.90 per hour as a banquet server. In February 2012, Ms. Doane was seen by another neurologist, Dr. Morteza Shamsnia, this time complaining of neck pain and pain in her temporomandibular joint ("TMJ"). An MRI was normal except for some sinus issues. Dr. Shamsnia placed no work restrictions on Ms. Doane and made no diagnosis.

The trial of Ms. Doane's workers' compensation claim was held before the WCJ on May 11 and May 16, 2012. On August 17, 2012, the WCJ rendered a judgment

(the "August 2012 Judgment") awarding Ms. Doane: (1) back-due indemnity benefits of $935.68; (2) SEBs of $2,944.99 from June 10, 2011 through December 31, 2011; (3) $2,000.00 in penalties based on Omni's failure to correctly [3]calculate Ms. Doane's average weekly wage; (4) $2,000.00 in penalties based on Omni's failure to pay Ms. Doane SEBs when it knew that her earning capacity was less than 90 percent of her pre-accident wage; and (5) $12,500.00 in attorney's fees based on Omni's failure to correctly calculate her average weekly wage and failure to pay SEBs. The WCJ found that Ms. Doane was entitled to payment of SEBs "until she [was] able to earn 90% of her pre-injury wage or as otherwise dictated by the Act." The WCJ also found, however, that the "medical evidence demonstrate[d] that any ongoing disability beyond those restrictions assigned by Dr. Fiore is unrelated to the work place accident and is therefore not compensable."

Although Ms. Doane earned $5,849.81 in wages from IHS between January 2012 and April 2013, in June 2013, Ms. Doane stopped working for IHS and began to report a zero earning capacity. In July 2013, Omni filed a Petition to Modify the August 2012 Judgment on the grounds that Ms. Doane's disability status had changed, that she was capable of earning greater than 90 percent of her average weekly wage, and that any current disability was not causally related to her workplace injury. Omni also filed a Notice of Suspension of Benefits. In response, Ms. Doane filed a Motion to Enforce the August 2012 Judgment awarding her SEBs.

The trial of Omni's Petition to Modify Judgment and Ms. Doane's Motion to Enforce Judgment was held on August 21, 2013, December 19, 2013, January 6, 2014, and April 17, 2014.

On August 21, 2015, the WCJ rendered a judgment granting Omni's Petition to Modify the August 2012 Judgment. The WCJ concluded that Omni carried its burden of proving that Ms. Doane's medical condition had changed since the August 2012 Judgment, and that Ms. Doane was capable of earning greater than 90 percent of her pre-accident wage. Accordingly, the WCJ declared that Ms. Doane was no longer entitled to SEBs.[1]

## DISCUSSION

As an initial matter, we note that Ms. Doane's pro se brief does not comply with the requirements of Uniform Rules, Courts of Appeal, Rule 2–12.4. Ms. Doane's two-page, handwritten brief contains no assignments of error, no briefing of arguments, no record references, and no jurisdictional statement. Despite this noncompliance, this court has considered briefs in improper form when filed by a pro se party. *See Carsice v. Empire Janitorial*, 08–0741, p. 3 (La.App. 4 Cir. 12/17/08), 2 So.3d 553, 555; *Williams v. Orleans Parish Sch. Bd.*, 10–1441, p. 3 (La.App. 4 Cir. 2/9/11), 61 So.3d 48, 50. Accordingly, in light of Ms. Doane's pro se status, we consider the merits of her appeal.

In her brief, Ms. Doane states that, as of March 2016, she is still experiencing headaches and dizziness caused by her work-related accident on November 9, 2010, and that she believes that she should still be receiving workers' compensation benefits. As far as can be ascertained from Ms. Doane's pro se brief, the sole issue is whether the WCJ erred in finding in August 2015 that Omni was no longer obligated to pay SEBs because Ms. Doane was capable of earning greater than 90 percent of her pre-accident wage.[2]

## Standard of Review

On appellate review, the WCJ's findings as to whether an employer carried its burden of proving that SEBs should be reduced or terminated is governed by the manifest error or clearly wrong standard of review. *Bastoe v. Burger King Distribution Serv.*, 96–0021, 96–0023 p. 5 ( La.App. 4 Cir. 3/19/97, 691 So.2d 274, 277. In applying the manifest error standard, we must review the entire record and determine whether the factual conclusions of the WCJ are reasonable, not whether the fact-finder was right or wrong. *Russell*, 15–0380 at p. 13, 187 So.3d at 101. When legal error interdicts the fact-finding process, however, our review of those findings is conducted *de novo*. *Aisola v. Beacon Hosp. Mgt.*, 13–1101, p. 8 (La.App. 4 Cir. 4/2/14), 140 So.3d 71, 77. We likewise review the WCJ's legal conclusions *de novo*. *Id.*, 13–1101 at pp. 8–9, 140 So.3d at 78.

## Shifting Burdens of Proof: Entitlement to SEBs

"The purpose of SEBs is to provide compensation to an injured employee for [her] lost wage-earning capacity." *Bastoe*, 96–0021 at p. 3, 691 So.2d at 276. A workers' compensation claimant is entitled to SEBs if, as a result of a work-related injury, she is unable to earn at least 90 percent of her pre-injury wages. *Id.*; La. R.S. 23:1221(3)(a).

---

1. The WCJ also granted Ms. Doane's Motion to Enforce the August 2012 Judgment to the extent that Omni had already agreed to pay SEBs to Ms. Doane from July 2013 through December 31, 2013, pursuant to a written consent judgment.

2. By seeking SEBs, which is a method of replacement of lost wages for partially disabled employees, Ms. Doane acknowledges that she is not totally disabled from gainful employment. *Russell v. Sewerage & Water Bd. New Orleans*, 15–0380, 15, 187 So.3d 94, 102 n.7 (internal citations omitted).

Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in her inability to earn that amount under the facts and circumstances of the individual case. *Clay v. Our Lady of Lourdes Reg'l Med. Ctr., Inc.*, 11–1797, p. 4 (La. 5/8/12), 93 So.3d 536, 539. "In determining if an injured employee has made out a prima facie case of entitlement to [SEBs], the trial court may and should take into account all those factors which might bear on an employee's ability to earn a wage." *Poissenot v. St. Bernard Parish Sheriff's Office*, 09–2793, p. 5 (La. 1/9/11), 56 So.3d 170, 174 (*quoting Daigle v. Sherwin-Williams*, 545 So.2d 1005, 1009 (La. 1989)).

Once the employee has established that she is entitled to SEBs by showing that she is unable to earn at least 90 percent of her pre-injury wage, the burden shifts to the employer who, in order to defeat the employee's claim for SEBs, must prove, by a preponderance of the evidence, that: (1) the employee is physically able to perform a certain job; and (2) the job was offered to the employee or that the job was available to the employee in her or the employer's community or reasonable geographic region. *Id.*; La. R.S. 23:1221(3)(c)(i). The employer can discharge this burden by establishing: (1) the existence of a suitable job within claimant's physical capabilities; (2) the amount of wages an employee with claimant's experience and training can expect to earn in that job; and (3) an actual position available for the particular job at the time the claimant received notification of the job's existence. *Bethley v. City of New Orleans*, 06–0921, p. 5 (La.App. 4 Cir. 10/18/06), 945 So.2d 738, 742.

Finally, if the employer is successful in sustaining its burden, the burden shifts back to the employee to show by clear and convincing evidence, unaided by any presumption of disability, that she is unable to perform the employment offered solely as a consequence of substantial pain. *Id.*; La. R.S. 23:1221(3)(c)(ii).

**Omni's Burden of Proof: Ms. Doane is Physically Able to Perform a Certain Job and That Job Has Been Offered to Her or Is Available to Her.**

In this matter, Omni is seeking to terminate Ms. Doane's SEBs, which were awarded in the WCJ's August 17, 2012 Judgment. Omni, therefore, bears the initial burden of showing that Ms. Doane is physically able to perform a certain job, and that this job was offered to Ms. Doane or is available in her community or in a reasonable geographic region.

### *Ms. Doane is Physically Able to Perform the Job of Banquet Server*

The evidence introduced at trial shows that in January 2012, Ms. Doane began working for IHS as a banquet server at various local hotels, earning $11.90 per hour. Ms. Doane testified that when she was hired by IHS she told them that she had been in an accident, injured her head, and that she was experiencing headaches and nausea, and couldn't carry anything heavy. She also told IHS that she was taking pain medication and muscle relaxants while she was at work. Ms. Doane testified that IHS had no objection to these work limitations.[3] The testimony at trial showed that IHS allowed Ms. Doane to do mostly sedentary work such as rolling silverware, cutting lemons, and folding napkins. Ms. Doane stated that when doing heavier work such as setting up tables, she would get help from her co-workers,

---

3. Even though Ms. Doane could not perform heavy lifting, IHS's vice-president, Amanda Castro, described Ms. Doane as an "excellent worker."

which included her family members. According to Ms. Doane's IHS wage records, she was physically capable of working full time, earning $1,157.55 in February 2013, three months before she quit working.

The medical evidence introduced at trial further supports a finding that Ms. Doane was physically capable of returning to work as a banquet server. In June 2011, Dr. Fiore believed that Ms. Doane could perform light duty work, subject to certain restrictions, which included working no more than 30 hours per week and having the ability to take breaks and unscheduled absences.

In a second medical opinion on September 5, 2013, neurologist Dr. Daniel J. Trahant found that "there was no organic or physical cause for the continuing nature of [Ms. Doane's] complaints." Dr. Trahant stated that her complaints, "both in severity and duration, [were] far more than would be expected considering the nature of her injuries." Dr. Trahant concluded that Ms. Doane "may return to work at full duties without restriction and that there [were] no longer term residuals to her injuries."

The WCJ appointed Dr. Najeeb Thomas, an independent neurosurgeon, to evaluate Ms. Doane in November 2013. At this time, Ms. Doane reported neck pain, headaches, and photophobia. Dr. Thomas did not believe that Ms. Doane needed any surgery on her neck, and stated that he would refer Ms. Doane to her neurologist for the treatment of her headaches. Dr. Thomas stated that Ms. Doane was at maximum medical improvement for her neck, and that she could return to work "on an as-tolerated basis." Dr. Thomas recommended only the use of anti-inflammatories to assist with her complaints of pain.

The WCJ also ordered that Ms. Doane be examined by the WCJ's own expert neuropsychologist, Dr. Michael Chafetz. In October 2014, Dr. Chafetz performed numerous tests and conducted a neuropsychological examination of Ms. Doane. To ensure validity, several tests were given to Ms. Doane in her native language, Spanish. Additionally, an interpreter was available for any questions she might have on English portions of the exam. Dr. Chaftez found that Ms. Doane was depressed, but did not relate this condition to the accident. Dr. Chaftez found "no evidence of limiting neurocognitive or pain problems that [were] credible and valid." Dr. Chafetz also found that Ms. Doane's presentation of pain-related disability fit the criteria for "malingered pain-related disability," with a 99 percent probability of malingering. According to Dr. Chafetz, Ms. Doane "failed several established validity tests and/or indicators, and made claims that [were] inconsistent with known aspects of brain functioning and recovery from concussion." According to Dr. Chafetz, Ms. Doane "[did] so without the presence of known psychiatric, neurological or developmental conditions that could better explain this failure." Dr. Chafetz concluded that Ms. Doane did not have any neuropsychological impairment. He also concluded that she was "not restricted [from work] by any neurocognitive problem."

Even though Drs. Fiore, Thomas, Trahant and Chafetz all released Ms. Doane to return to work to some extent, Ms. Doane's primary care doctor, Dr. William Alden, stated in September 2013 that Ms. Doane was unable to return to her past occupation because of what he described as: post-traumatic cephalgia (headaches); TMJ tenderness; cervical, thoracic, lumbar, abdominal, and left wrist strain; and chest and ribcage contusions. Dr. Alden causally related all of these medical conditions to Ms. Doane's accident at work.

In the WCJ's written reasons for judgment, the WCJ gave "little weight" to Dr. Alden's conclusions on the grounds that they were contrary to all the other physicians with specialized knowledge, and because these complaints were causally related to some of Ms. Doane's pre-existing conditions, such as TMJ.[4]

In January 2015, after the trial concluded but before the WCJ rendered a judgment, Ms. Doane was seen by her choice of clinical psychologist, Dr. Joseph Tramontana.[5] Dr. Tramontana performed tests to measure depression and anxiety, and found that Ms. Doane had a generalized anxiety disorder and a pain disorder associated with both "psychological factors and a general medical condition." Although Dr. Tramontana tested Ms. Doane to obtain a "Pain Patient Profile" and "Personality Assessment Inventory," Dr. Tramontana invalidated Ms. Doane's test results because of possible factors such as "carelessness, reading difficulties, confusion, exaggeration, malingering or defensiveness." Dr. Tramontana concluded that Ms. Doane was "unable to maintain gainful employment" due to her "physical and mental conditions," which he attributed to the accident.

In the WCJ's written reasons for judgment, the WCJ also gave "little weight" to Dr. Tramontana's conclusions because "multiple medical doctors felt that Ms. Doane's physical complaints were not related to her accident." The WCJ also gave greater weight and deference to its "impartial expert neuropsychologist," Dr. Chafetz, whose testing the WCJ found was "more extensive" than Dr. Tramontana's.

"The WCJ is afforded considerable discretion in evaluating expert testimony, and the decision to accept testimony of one expert over the conflicting testimony of another can virtually never be manifestly erroneous." *Leidelmeijen v. Ferncrest Manor Nursing Home*, 15–1216, pp.19–20 (La.App. 4 Cir. 3/16/16), 191 So.3d 38, 51. Based on our review of the record, we find that the WCJ was reasonable in concluding that "the totality of the medical and factual evidence" demonstrated that Ms. Doane was physically capable of returning to work as a banquet server.

### The Job of Banquet Server Was Offered to Ms. Doane

With respect to an offer of suitable work within Ms. Doane's physical capabilities, Tara Bordelon, Ms. Doane's vocational rehabilitation case manager, and Lorena Maldonado, IHS's human resources director, both testified at trial that IHS offered Ms. Doane full-time work as a banquet server at $11.90 per hour, which would enable her to earn greater that 90 percent of her pre-accident wage. Ms. Doane also testified at trial that she had been hired by another company called "SHS," where she would be paid $13.50 per hour for the same work, but that she had not accepted the job. Ms. Doane said that she told SHS about her work-related

4. In April 2012, Dr. Fiore issued the following report:

> I had the opportunity to review Ms. [Doane's] medical records dating back to July of 2007. These demonstrate a history of Ms. [Doane] having complaints of dizziness, headaches and recurrent sinusitis. Also, she has a history of TMJ surgery and sinus surgery. **Given these preexisting conditions and pattern of symptoms, it is clear to me**

> **that her head injury of 2010 for which I had been treating her cannot be deemed to be in any way the sole cause of her current complaints, which bear a strong resemblance to those she had before the accident.** [Emphasis added]

5. Ms. Doane's attorney filed a Motion to Receive Additional Evidence, which consisted of Dr. Tramontana's medical records.

accident and her need for pain medication, and they said "it doesn't matter."[6]

Based on our review of the record, we find that the WCJ was not clearly wrong in concluding that Ms. Doane was offered a suitable position within her physical capabilities which would enable her to earn more than 90 percent of her pre-accident wage. Omni, therefore, has satisfied its burden of proof with respect to termination of Ms. Doane's SEBs.

## Ms. Doane's Burden of Proof: She Is Unable to Perform the Employment Offered Solely as a Consequence of Substantial Pain

■ The fact that Omni has met its burden of proof does not end the inquiry. Once the employer meets its burden under the statute, the burden shifts back to the employee to show "by clear and convincing evidence, unaided by any presumption of disability, that [s]he is unable to perform employment offered or available solely as a consequence of substantial pain." *Bethley*, 06–0921 at p. 5, 945 So.2d at 742; La. R.S. 23:1221(3)(c)(ii). As noted by this court in *Bethley*, when the legislature enacted this heightened standard of proof, it "obviously recognized the potential for abuse in this area." *Id.*, 06–0921 at p. 6, 945 So.2d at 742 (quoting *Duhon v. Holi Temp. Servs., Inc.*, 97–0604, p. 7 (La.App. 4 Cir. 10/1/97), 700 So.2d 1152, 1155).

At trial, Ms. Doane testified that "on many occasions" she was unable to work shifts at IHC because of headaches, dizziness and nausea. She also testified that her eyes were sensitive to the light, and that she had pain in her lower back, wrists and left leg. She testified that, because of the pain, she had to take pain and inflammation medications and muscle relaxers at work. She stated that she stopped working because her headaches would not go away and that when she overexerted herself, the pain would get worse.

Maria Herrera, Ms. Doane's sister who also worked at IHS, testified that Ms. Doane often was unable to work because she was bedridden and had to take pain medication. She also testified that her sister complained of pain at work and she witnessed Ms. Doane taking pain medication and muscle relaxers while working.

With respect to Ms. Doane's complaints of pain, Dr. Trahant could not find any objective evidence to explain Ms. Doane's continued complaints. Dr. Trahant suggested that Ms. Doane might be malingering, stating that, because "there was no organic cause for the continuing nature of her complaints," he felt that "there may be secondary gain or emotional issues at play." Likewise, Dr. Chafetz stated that Ms. Doane "fit[ ] established criteria for malingered neurocognitive dysfunction." Dr. Chafetz also reported his impression that Ms. Doane might be drug-seeking by over-reporting pain. The WCJ, in her reasons for judgment, considered Ms. Doane to be "malingering."

"[W]hen findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings." *Tubre v. Auto. Club of S. California*, 14–0859, p. 8 (La. App. 4 Cir. 2/4/15), 160 So.3d 1021, 1027. Based on our own review of the record, we find that the WCJ's evaluations of credibility were reasonable, and conclude Ms. Doane failed to prove by clear and convincing evidence that, solely as a consequence of substantial pain, she could not perform the employment available to her.

---

6. The geographic location of the banquet ser-     ver job at SHS was not identified at trial.

## CONCLUSION

This matter turns largely on credibility determinations by the WCJ with respect to the medical and factual evidence presented at trial. Because there are two permissible views of the evidence, we cannot conclude that the WCJ's choice between two reasonable views of the evidence is manifestly erroneous or clearly wrong. *Russell*, 15-0380 at p. 13, 187 So.3d at 101. Accordingly, we affirm the WCJ's August 2015 Judgment terminating Ms. Doane's SEBs.

**AFFIRMED.**

LOBRANO, J., CONCURS IN THE RESULT.

LOBRANO, J., CONCURS IN THE RESULT.