Judge Terri F. Love
This appeal arises from a disputed claim for compensation filed by the plaintiff for injuries sustained while on the job. After a door closed on plaintiff's foot at the hotel where she was working, she was unable to continue working. Plaintiff began to receive workers' compensation benefits, but the benefits were terminated approximately two years after injury. Plaintiff then filed a disputed claim for compensation. Following a trial, the workers' compensation court judge dismissed plaintiff's claims. Plaintiff filed an appeal in proper person contending that she remained entitled to workers' compensation benefits because she continues to suffer from pain and cannot work. We find that the trial court did not commit manifest error by dismissing plaintiff's claims, as there were two permissible views of the evidence, and affirm.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
On April 12, 2014, Maxine Hall was working as a housekeeper for Global Solution Services, LLC ("Global") when a closet door automatically shut on her left foot while she was performing a turn down service at the Roosevelt Hotel. Ms. Hall was told at the Ochsner emergency room *897 that no bones were broken. However, Ms. Hall continued to experience pain and swelling. Ms. Hall then treated with Dr. Gregory Moldin, who prescribed pain medication. Ms. Hall's caseworker then directed her to Concentra where Ms. Hall received another x-ray and discovered that she had a fracture in her toe. Ms. Hall was placed on crutches and given a boot. Ms. Hall was then treated by an orthopedic surgeon, a neurologist, a vascular surgeon, and a pain management doctor. Ms. Hall contends she received no relief from her pain, continues to experience swelling, tenderness, and is unable to return to work.
Ms. Hall began receiving workers' compensation benefits as a result of her injuries, but the benefits were terminated on August 7, 2016. Ms. Hall then filed a Disputed Claim for Compensation against Global and its insurer, Illinois National Insurance Company ("Illinois"), seeking a reinstatement of benefits, an authorization for medical treatment, and alleging that Global failed to pay or timely pay for travel expenses. Ms. Hall also requested penalties and attorney's fees. Following the trial, the workers' compensation court judge dismissed Ms. Hall's Disputed Claim for Compensation at her own costs.[1] Ms. Hall filed an appeal in proper person. Ms. Hall contends that the workers' compensation court judge erred by dismissing her claims.
STANDARD OF REVIEW
"Appellate courts review workers' compensation cases using the manifest error-clearly wrong standard of review." Martinez v. Rames , 16-1312, p. 2 (La. App. 4 Cir. 7/12/17), 224 So.3d 467, 470. "In applying the manifest error-clearly wrong standard of review, the appellate court must not determine whether the trier of fact was right or wrong, but only whether the factfinder's conclusion was a reasonable one." Chaisson v. Louisiana Rock Monsters, LLC , 13-1423, p. 3 (La. App. 4 Cir. 4/2/14), 140 So.3d 55, 57. "Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong." Id. "Thus, 'if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.' " Banks v. Indus. Roofing & Sheet Metal Works, Inc. , 96-2840, p. 8 (La. 7/1/97), 696 So.2d 551, 556, quoting Sistler v. Liberty Mut. Ins. Co. , 558 So.2d 1106, 1112 (La. 1990).
"When legal error interdicts the fact-finding process in a workers compensation proceeding, the de novo , rather than the manifest error, standard of review applies." Tulane Univ. Hosp. & Clinic v. Lockheed Martin Corp. , 11-0179, p. 3 (La. App. 4 Cir. 6/29/11), 70 So.3d 988, 990. "Likewise, interpretation of statutes pertaining to workers' compensation is a question of law and warrants a de novo review to determine if the ruling was legally correct." Id.
DISPUTED CLAIM FOR COMPENSATION
Ms. Hall asserts that the trial court erroneously dismissed her Disputed Claim for Compensation.
Initially, Ms. Hall sought treatment at an Ochsner emergency room and was told she had no broken bones. After being treated by Dr. Moldin, she was told to go to Concentra. There, she received another x-ray and was informed that her toe was fractured.
*898 Dr. Robert Bostick III
Dr. Bostick III, an orthopedic surgeon, treated Ms. Hall between May 2014, and February 2015. Dr. Bostick III assessed Ms. Hall as having achilles bursitis /tendonitis, contusion of the toe, midfoot sprain, and neuralgia-neuritis. He ordered an MRI of her left foot and lumbar spine. Dr. Bostick III initially stated that Ms. Hall could return to work on a sedentary basis, but required her to wear a cast shoe. However, in early 2015, he wrote that Ms. Hall was unable to return to work. Dr. Bostick III also prescribed Ms. Hall several medications. Dr. Bostick III referred Ms. Hall to Dr. Robert Batson and Dr. Morteza Shamsnia.
Dr. Robert Batson
Ms. Hall treated with Dr. Batson, a vascular surgeon, at the referral of Dr. Bostick III, between February 2015, and June 2015. Dr. Batson noted that Ms. Hall was suffering from Complex Regional Pain Syndrome ("CRPS") and recommended that she see Dr. Paul Hubbell for a nerve block. Following the nerve block from Dr. Hubbell, Dr. Batson noted that Ms. Hall had "significant improvement following block." Ms. Hall did not receive any further nerve blocks.
Dr. Morteza Shamsnia
Upon Dr. Bostick III's referral, Ms. Hall treated with Dr. Shamsnia, a neurologist, between April 2015, through June 2016, for her continuing symptoms. Ms. Hall reported to Dr. Shamsnia, complaining of "swelling in the left foot and ankle, weakness in the left foot and numbness and burning in the bottom of her left foot" with "vague discomfort around her left ankle." Dr. Shamsnia noted that Ms. Hall was unable to return to work in April 2015. In April 2015, Dr. Shamsnia noted that Ms. Hall was suffering from left foot pain, possible tarsal tunnel syndrome, and possible CRPS. By June 2016, Dr. Shamsnia noted that Ms. Hall was suffering from tarsal tunnel syndrome, left peroneal neuropathy, and lumbosacral radiculopathies. Ms. Hall remained on medications and Dr. Shamsnia recommended physical therapy.
Dr. Ramon Rodriguez
Ms. Hall was referred to Dr. Rodriguez, an orthopedist, for a second medical opinion in October 2014. Dr. Rodriguez diagnosed Ms. Hall with acute foot pain, CRPS, and back pain with radicular symptoms in the left leg.
Dr. Daniel Trahant
Dr. Trahant, an expert in neurology, treated Ms. Hall in May 2016, as a referral from defendants, Global and Illinois. Dr. Trahant stated in his report that:
[a]ny pain that she is experiencing is on an orthopedic or soft tissue basis. Her complaints, however, and limitation of function of the left foot and, in fact, the entire leg, are all out of proportion to the nature of the injury and is not supported by the clinical examination or diagnostic studies.
Dr. Trahant testified in his deposition that Ms. Hall was not suffering from CRPS. Further, Dr. Trahant stated that Ms. Hall's remaining complaints were "basically of a subjective nature." When questioned, he indicated her symptoms were out of proportion and exaggerated. Dr. Trahant found that Ms. Hall reached maximum medical improvement and should not have any permanent impairment, from a neurological perspective. Dr. Trahant also testified that "from a neurological perspective, she may return to work in any capacity." However, Dr. Trahant qualified that he "would defer to an orthopedist to what his consideration would be for work status on an orthopedic basis, but as far as any nerve injury or neurological cause for her pain, [he] did not think there was one."
*899 Dr. Chad Domangue
Dr. Domangue was appointed by the Office of Workers' Compensation to conduct an independent medical exam on Ms. Hall. During his exam in July 2016, Dr. Domangue noted that Ms. Hall presented to his office on crutches, but wearing two athletic running shoes.[2] Dr. Domangue found "that Ms. Hall's pain perception was over exaggerated and [he] could easily distract to change her reactions to stimuli." Dr. Domangue further notes that Ms. Hall "had no objective findings for complex regional pain syndrome including normal skin texture and color." Dr. Domangue diagnosed Ms. Hall with malingering.
Dr. Domangue explained:
I want to specify that I do not think that Ms. Hall has complex regional pain syndrome and all of her symptoms are malingering and secondary to conscious stimulation. Her imaging does not show any findings other than a small fracture which was healed and does not show any changes that would correlate with a diagnosis of complex regional pain syndrome.
He further opined
[t]he other inconsistency during the exam is the amount of pain she expressed with even the lightest touch in her foot yet she came into my clinic wearing a sock and a running shoe on that foot. I want to specify that the amount of pressure that the sock and shoe would place on the lower extremity is remarkably more than the light touch that I was applying during the physical exam. Also as stated above when we would talk and I would exam other body parts in distraction I was able to lightly touch her foot without the same exaggerated response. I agree with Dr. Trahant's assessment that there is nothing neurologically wrong with Ms. Hall and the only pain that she could be experiencing is on an orthopedic or soft tissue basis. But at this point I think that she is not experiencing organic symptoms and as stated above I think that there are conscious simulation in etiology. I also agree with Dr. Trahant that she has reached maximum medical improvement and from a neurologic perspective there is no reason she cannot go back to the previous levels of duty and she has no medical restrictions from this minor trauma.
Overall, Dr. Domangue found that Ms. Hall suffered from "nothing more than a contusion of her foot" and that "the reason why she has quote, unquote 'pain' and has swelling is because she is consciously not using her leg, and that's what I think is going on." Dr. Domangue stated that Ms. Hall could return to work without restrictions.
University Medical Center
Approximately two months before trial, Ms. Hall began treating at University Medical Center New Orleans. The medical records reflect that Ms. Hall was diagnosed with nerve pain and was continuing to treat with opiates. Ms. Hall was referred to physical therapy.
A review of the medical evidence and testimony presented at trial reflects that one group of physicians believed Ms. Hall suffered from CRPS and could not return to work, while the other group of physicians found that Ms. Hall did not suffer from CRPS and could fully return to work. Notably, the IME found that Ms. Hall did not have CRPS and could return *900 to work. "The courts have interpreted La. R.S. 23:1123[3] to mean that an IME's medical conclusions should be given significant weight because the IME is an objective witness." Bell , 10-0818, p. 11, 54 So.3d at 1234. Considering this and that two permissible views of the evidence exist, we cannot find that the workers' compensation court judge committed manifest error by dismissing Ms. Hall's Disputed Claim for Compensation. The judgment is affirmed.
DECREE
For the above-mentioned reasons, we find that the trial court did not commit manifest error by dismissing Ms. Hall's Disputed Claim for Compensation, as two permissible views of the evidence existed. Accordingly, the judgment of the workers' compensation court is affirmed.
AFFIRMED

No written reasons were provided by the workers' compensation court judge.

Ms. Hall contended this statement was untrue, as she indicated she could only wear a running shoe on her right foot.

La. R.S. 23:1123"provides for the appointment of an IME when there is a conflict in the medical evidence." Bell v. Mid City Printers, Inc. , 10-0818, p. 11 (La. App. 4 Cir. 12/22/10), 54 So.3d 1226, 1234.