JUDGE SANDRA CABRINA JENKINS
This is a workers' compensation case. Family Dollar Stores of Louisiana, Inc. ("Family Dollar"); S & S Janitorial Services, LLC ("S & S"); and SMS Assist, LLC ("SMS") (collectively, "Employers"), appeal the January 30, 2017 judgment of the Workers' Compensation Judge ("WCJ") awarding wage and medical benefits, penalties and attorney's fees to appellee, Angela Jackson. Employers also appeal the WCJ's March 22, 2017 judgment denying the Employers' Motion for New Trial. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On June 12, 2015, Ms. Jackson filed a Disputed Claim for Compensation (the *170 "Claim") with the Office of Workers' Compensation ("OWC"). Ms. Jackson reported that, on October 22, 2014, between 10:30 and 11:00 p.m., she was injured at a Family Dollar store in New Orleans. Ms. Jackson stated that a shelf of bottled water fell on her ankle causing a fracture and requiring surgery. The Claim identified Family Dollar as her statutory employer, and alleged that Family Dollar had not paid wage benefits, and had not authorized medical treatment. Ms. Jackson sought penalties and attorney's fees for Family Dollar's arbitrary and capricious denial of benefits.
On July 20, 2015, Family Dollar filed an Answer to Claim and Third-Party Demand against S & S, seeking a defense and indemnity pursuant to an "Affiliate Master Service Agreement" (the "Agreement") in which S & S contracted to provide floor care services to Family Dollar stores in Louisiana. According to the Third-Party demand, S & S was obligated under the Agreement to obtain workers' compensation insurance for its employees who performed floor preparation and cleaning. In the Answer, Family Dollar denied that Ms. Jackson was an employee at the time of the accident.
On August 28, 2015, Ms. Jackson filed a Supplemental Disputed Claim for Compensation ("Supplemental Claim") naming S & S and SMS as additional defendants. Ms. Jackson alleged that S & S was her employer at the time of the accident, and that SMS was the general contractor of the work.
On September 18, 2015, SMS filed an Answer to Ms. Jackson's Supplemental Claim, along with a Third-Party Demand against S & S based on the Agreement's provision requiring S & S to obtain workers' compensation insurance. In the Answer, SMS also denied that Ms. Jackson was an employee on the date of the injury.
On October 5, 2015, S & S filed an Answer to Ms. Jackson's Claim and Supplemental Claim, also denying that Ms. Jackson was an employee of S & S at the time of the accident.
A trial was held on January 4, 2017. On January 30, 2017, the WCJ rendered the following judgment:
• On October 22, 2014, Ms. Jackson was a direct employee of Becky Tolito and Tolito Services Company, LLC; and a statutory employee of S & S, SMS, and Family Dollar.[1]
• Ms. Jackson was injured on October 22, 2014 at the Family Dollar store on S. Carrollton Avenue in New Orleans in the course and scope of her employment, and suffered a compensable workplace accident.
• Ms. Jackson sustained and suffered a compensable workplace injury to her ankle after a shelf full of packaged water on the premises of the Family Dollar store on S. Carrollton Avenue fell on top of her leg and ankle.
• Ms. Jackson properly sought and received medical treatment for the ankle injury after the accident at Biloxi Regional Medical Center and follow-up treatment at Bienville Orthopedic Specialists, LLC with Dr. Yakaterina Karpitskaya, and again at Memorial Hospital in Gulfport.
• The employers shall pay all outstanding medical bills for services rendered to Ms. Jackson as they relate to the injuries she received on October 22, 2014 totaling $92,278.00.
*171 • Ms. Jackson was a recipient of Medicaid benefits at the time of her injury on October 22, 2014, and that those Medicaid benefits were utilized during her treatment for the injuries sustained on October 22, 2014. Employers are liable under La. R.S.23:1205 to reimburse Medicaid for any and all amounts paid for services rendered to Ms. Jackson as a result of the October 22, 2014 accident.
• Ms. Jackson was paid $50.00 per store as compensation for working. As a result of the accident, Angela Jackson was rendered temporarily total disabled ("TTD") from October 22, 2014 until April 30, 2015 pursuant to La. R.S. 23:1221(1). The minimum compensation rate in effect at the time of the accident was $168.00/per week. The total TTD figure for 27.28 weeks at $168.00/per week is $4,584.00.
• Ms. Jackson carried her burden of proof that she was entitled to supplemental earnings benefits ("SEBs") pursuant to La. R.S. 23:1221(3) and she is entitled to SEBs until such time as earning capacity is demonstrated at the rate of $168/per week from May 1, 2015 and until such a time not to exceed a maximum of five hundred and twenty weeks.
• Employers failed to reasonably controvert this claim and/or establish that there were conditions over which they had no control when they failed to pay this claim; penalties are assessed against the employers in the amount of $2,000.00 pursuant to La. RS. 23:1201(F) for failure to timely pay indemnity benefits.
• Employers failed to reasonably controvert this claim and/or establish that there were conditions over which they had no control when they failed to pay this claim; penalties are assessed against the employers in the amount of $2,000.00 pursuant to La. RS. 23:1201(F) for failure to timely pay medical benefits.
• Employers are assessed attorney's fees in the amount of $3,000.00 pursuant to La. R.S. 23:1201(F) for their failure to pay indemnity benefits and medical benefits timely or otherwise. Employers failed to establish they reasonably controverted this claim and/or that there were conditions over which they had no control when they failed to pay this claim.
• This matter shall be dismissed with prejudice, reserving all of Ms. Jackson's future rights.
On February 9, 2017, Employers filed a Motion for New Trial, which the WCJ denied on March 22, 2017. Employers appealed.
On August 28, 2017, Ms. Jackson filed a Motion to Dismiss Appeal, pursuant to La. R.S. 23:1310.5(C), because Employers did not post an appeal bond, which is required when there has been an award of workers' compensation benefits. On January 5, 2018, this Court granted Ms. Jackson's motion, dismissed the appeal, and remanded this matter for the setting of a bond. Jackson v. Family Dollar Stores of Louisiana, Inc. , 17-0712 (La. App. 4 Cir. 1/5/18), --- So.3d ----, 2018 WL 304386. After Employers posted the necessary appeal bond, they filed a Motion to Reinstate Appeal, which this Court denied because of lack of jurisdiction.
Thereafter, Ms. Jackson filed a writ of certiorari and/or review with the Louisiana Supreme Court, which granted the writ. Jackson v. Family Dollar Stores of Louisiana, Inc. , 18-0170 (La. 4/18/18), 247 So.3d 727. On June 27, 2018, the Supreme Court affirmed this court's finding that it *172 could not entertain the appeal until a bond was posted. Jackson v. Family Dollar Stores of Louisiana, Inc. , 18-170 (La. 6/27/18), 251 So.3d 368. The Supreme Court found that, because Employers had submitted evidence that the bond had been set and posted, there was no longer an impediment to consideration of the appeal. Accordingly, the Supreme Court remanded this matter to this Court for consideration of the appeal on the merits.
DISCUSSION
Standard of Review
In workers' compensation cases, "it is well-settled that the appropriate standard of appellate review is the manifest error or clearly wrong standard." Blair v. Wal-Mart Stores, Inc. , 01-2211, p.7 (La. App. 4 Cir. 5/15/02), 818 So.2d 1042, 1047. Under that standard, "[t]he trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error." Id. (quoting Bruno v. Harbert Int'l, Inc ., 593 So.2d 357, 361 (La. 1992) ). However, "[w]hen legal error interdicts the fact-finding process in a workers['] compensation proceeding, the de novo , rather than manifest error, standard of review applies." Tulane Univ. Hosp. & Clinic v. Lockheed Martin Corp. , 11-0179, p. 3 (La. App. 4 Cir. 6/29/11), 70 So.3d 988, 990(citing MacFarlane v. Schneider Nat'l Bulk Carriers, Inc. , 07-1386, p. 3 (La. App. 4 Cir. 4/30/08), 984 So.2d 185, 188 ). "Likewise, interpretation of statutes pertaining to workers' compensation is a question of law and warrants a de novo review to determine if the ruling was legally correct." Id.
Assignments of Error
Employers list five assignments of error.
(1) The WCJ erred, as a matter of law, in finding that Ms. Jackson's accident was during the course and scope of her employment.
(2) The WCJ erred, as a matter of law, in finding that Ms. Jackson was rendered temporarily totally disabled from October 22, 2014 until April 30, 2015.
(3) The WCJ erred, as a matter of law, in finding that Ms. Jackson was entitled to supplemental earnings benefits under La. R.S. 23:1221(3).
(4) The WCJ erred, as a matter of law, when it ordered Employers to pay outstanding medical bills totaling $92,278.80 on the evidence presented.
(5) The WCJ erred, as a matter of law, when it found that Employers were liable for penalties and attorney's fees under La. R.S. 23:1201(F).
Assignment of Error No. 1: Course and Scope of Employment
Employers argue that Ms. Jackson did not prove by a preponderance of the evidence that she was employed "by anyone" on October 22, 2014, the date of the accident. According to Employers, Ms. Jackson's testimony that she was employed by Tolito Services Company, LLC ("Tolito") was contradicted by the testimony of Becky Tolito, the managing member of Tolito. Employers also assert that the corroborating testimony of Amos Mays, Ms. Jackson's boyfriend at the time of the accident, was biased and not credible. Employers further contend that Ms. Jackson's statement in the emergency room was inconsistent with her later trial testimony.
A threshold requirement in a workers' compensation case is that a plaintiff *173 establish "personal injury by accident arising out of and in the course of employment." Dow v. Chalmette Restaurant, Ltd ., 15-0336, p. 17 (La. App. 4 Cir. 5/18/16), 193 So.3d 1222, 1232 (citing Merrill v. Greyhound Lines, Inc. , 10-0834, p. 6 (La. App. 4 Cir. 6/29/11), 70 So.3d 991 ; La. R.S. 23:1031 ). "The employee has the burden of proving, by a preponderance of the evidence, that the resulting disability is related to an on-the-job injury." Id. In deciding whether the claimant has discharged her burden of proof, the fact-finder "should accept as true a witness's uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of the testimony." Bruno, 593 So.2d at 361. Where, however, there is contradictory testimony, the fact-finder's "reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal even though the appellate court may feel that its own evaluations and inferences are more reasonable." Merrill, 10-0834, pp. 5-6, 70 So.3d at 995.
At trial, there was contradictory testimony as to whether Ms. Jackson was in the course and scope of employment when the accident occurred. Ms. Jackson testified that she was an employee of Tolito and was being paid $50.00 in cash per job. Amos Mays, Ms. Jackson's boyfriend who worked for Tolito, testified that Ms. Jackson was working for Tolito on October 22, 2014 sweeping the floors when the shelf of bottled water fell on her.[2] Ms. Jackson's initial evaluation at the Therapy Center at Biloxi Regional Medical Center dated December 16, 2014 states that "[p]atient was sweeping at work when a shelf full of packaged water fell on top of her leg and ankle causing tibial/fibula fracture that required surgical repair." On the other hand, in the medical records from the emergency room at Biloxi Memorial Hospital, the nurse's notes state that Ms. Jackson said she was shopping at Family Dollar at the time of the accident. At trial, however, Ms. Jackson denied ever making this statement.
In the WCJ's Written Reasons for Judgment, she stated that the "facts surrounding this matter will turn on the credibility of the parties." According to the WCJ, she gave "great weight and credibility" to Ms. Jackson in determining the issue of whether she was in the course and scope of employment at the time of the accident. The WCJ noted Ms. Jackson's testimony that:
• In May 2014, Ms. Jackson was in search of employment and asked Mr. Mays' employer, Becky Tolito, about employment.
• Approximately one week before the accident, she accompanied Mr. Mays and Ms. Tolito to a jobsite in Mississippi to learn and observe the work necessary for employment.
• Although Ms. Jackson was only supposed to observe and learn, she ended up working and was paid $50.00 for the job.
• There was no paperwork executed at the beginning of Ms. Jackson's employment, only the oral agreement to work and get paid per store cleaned.
• On October 22, 2014, Ms. Jackson accompanied Ms. Tolito, Mr. Mays, and another individual to New Orleans to start a job at the Family Dollar store on S. Carrollton Avenue.
• When they arrived at the store, Ms. Jackson went to the back of the *174 store and began to sweep the floors to prepare them for cleaning.
To refute Ms. Jackson's testimony, the Employers rely on the trial testimony of Ms. Tolito, who said that she was with Ms. Jackson on October 22, 2014, and that Ms. Jackson was a visitor who was shopping in the Family Dollar store at the time of the accident. Ms. Tolito denied that Ms. Jackson was an employee of Tolito.
In the court's reasons for judgment, the WCJ discredited Ms. Tolito's testimony, stating that she was "unwilling to believe that Angela Jackson traveled all the way from Mississippi to shop at the Family Dollar Store in New Orleans, Louisiana." The WCJ also pointed out that Ms. Tolito "could provide no further evidence to prove that Angela Jackson was a customer on the night of October 14, 2014 in the Family Dollar Store." Without any corroboration of Ms. Tolito's testimony, the WCJ concluded that Ms. Jackson was an employee of Tolito on October 22, 2014.
We find that the WCJ's evaluations of credibility are reasonable. Where, as here, the trial court's "findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse." Hall v. Global Solution Servs., LLC , 18-0060, p. 3 (La. App. 4 Cir. 6/20/18), 249 So.3d 895, 897. Furthermore, we are satisfied that Ms. Jackson discharged her burden of proving that she was in the course and scope of employment by a preponderance of the evidence.[3] This assignment of error lacks merit.
Assignment of Error No. 2: TTD
Employers contend that the trial court erred in finding that Ms. Jackson was rendered temporarily totally disabled (TTD) from October 22, 2014 until April 30, 2015. According to Employers, Ms. Jackson is not entitled to TTD benefits because she offered no expert medical testimony on whether she sustained any disability from her injury.
The workers' compensation statute provides that an employee who suffers a workplace injury shall be awarded TTD benefits only when the employee proves by clear and convincing evidence that the employee "is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment." La. R.S. 23:1221(1)(C). We decline to follow the First Circuit cases cited by Employers, which require that the employee offer expert medical testimony. This Court only requires that an employee seeking TTD benefits introduce "objective medical evidence" to sustain his or her claim by clear and convincing evidence. Marti v. City of New Orleans , 12-1514, p. 30 (La. App. 4 Cir. 4/10/13), 115 So.3d 541, 560. In determining whether an employee has met her burden of proving by clear and convincing evidence her entitlement to TTD benefits, the WCJ must weigh both medical and lay evidence. Id. , 12-1514, pp. 30-31, 115 So.3d at 560.
The medical records reflect that Ms. Jackson underwent an open reduction and internal fixation of her right ankle on October 30, 2014. She was discharged following *175 her surgery on heavy pain medication. The records show that Ms. Jackson continued with physical therapy until February 3, 2015, at which time she had to discontinue therapy because of lack of insurance coverage. When therapy ended on February 3, 2015, Ms. Jackson was continuing to have significant problems. The physical therapy notes from February 2, 2015 state: "Pt ambulates without AD today with normal gait pattern but will demonstrate antalgic gait pattern after prolong[ed] walking."[4] The therapist's note on the last day of therapy, February 3, 2015, indicates that the pain goal was to decrease pain during functional activities once Ms. Jackson became weight bearing. The therapist's examination on February 3, 2015 reflects that Ms. Jackson was still experiencing moderate pain with palpation, that her strength in the right ankle was 4 out of 5, and that she had decreased range of motion, strength, and functional mobility, and had edema and pain. On February 3, 2015, Ms. Jackson was still on crutches. The therapist noted on this last visit that exacerbating factors included walking and that her standing and dynamic gait balance could not be assessed because she was still non-weight bearing on the right foot.
At trial, Ms. Jackson testified that she had not worked since the accident, but had tried to find work in Gulfport and Biloxi, Mississippi, and in California. She stated that she had applied at fast food restaurants such as McDonald's and KFC, and she also went to a labor staffing agency. Ms. Jackson said that she continued to have problems with her ankle, including hurting and throbbing, especially during cold weather. She testified that she can barely walk on the ankle, which swells when she walks too much. Ms. Jackson said that she has to walk everywhere because she does not have a car. She tries not to put weight on the foot when standing.
Based on this medical and lay evidence, the WCJ found that Ms. Jackson had met her burden of proof with respect to her claim for TTD benefits. We give great weight to this factual finding, and see no manifest error. Bolton v. Grant Parish Sch. Bd., 98-1430, p. 4 (La. 3/2/99), 730 So.2d 882, 885.
Assignment of Error No. 3: SEBs
Employers contend that Ms. Jackson is not entitled to SEBs because she presented no expert medical testimony or medical records supporting her assertion that she suffers from any disability at all.
"The purpose of SEBs is to provide compensation to an injured employee for [her] lost wage-earning capacity." Doane v. Omni Royal Orleans Hotel , 16-0144, p. 5 (La. App. 4 Cir. 10/26/16), 204 So.3d 615, 618. An employee is entitled to SEBs if, as a result of a work-related injury, she is unable to earn at least 90 percent of her pre-injury wages. Id. ; La. R.S. 23:1221(3)(a).
Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in her inability to earn that amount under the facts and circumstances of the individual case. Doane , 16-0144, p. 5, 204 So.3d at 619. "In determining if an injured employee has made out a prima facie case of entitlement to [SEBs], the trial court may and should take into account all those factors which might bear on an employee's *176 ability to earn a wage." Id. (quoting Poissenot v. St. Bernard Parish Sheriff's Office , 09-2793, p. 5 (La. 1/9/11), 56 So.3d 170, 174 ).
Once the employee has established that she is entitled to SEBs by showing that she is unable to earn at least 90 percent of her pre-injury wage, the burden shifts to the employer who, in order to defeat the employee's claim for SEBs, must prove, by a preponderance of the evidence, that: (1) the employee is physically able to perform a certain job; and (2) the job was offered to the employee or that the job was available to the employee in her or the employer's community or reasonable geographic region. Doane , 16-0144, pp. 5-6, 204 So.3d at 619 ; La. R.S. 23:1221(3)(c)(i). The employer can discharge this burden by establishing: (1) the existence of a suitable job within claimant's physical capabilities; (2) the amount of wages an employee with claimant's experience and training can expect to earn in that job; and (3) an actual position available for the particular job at the time the claimant received notification of the job's existence. Doane , 16-0144, p. 6, 204 So.3d at 619.
Finally, if the employer is successful in sustaining its burden, the burden shifts back to the employee to show by clear and convincing evidence, unaided by any presumption of disability, that she is unable to perform the employment offered solely as a consequence of substantial pain. Id. ; La. R.S. 23:1221(3)(c)(ii).
"In determining whether a hearing officer's finding that an employee has met his initial burden of proving entitlement to SEBs is manifestly erroneous, a reviewing court must examine the record for all evidence that bears upon the employee's inability to earn 90% or more of his pre-injury wages." Seal v. Gaylord Container Corp. , 97-0688, p. 8 (La. 12/02/97), 704 So.2d 1161, 1166 (emphasis in original).
The record shows that, after she was forced to discontinue physical therapy, Ms. Jackson continued to experience significant problems with her ankle. On March 1, 2016, almost a year after her last therapy, Ms. Jackson was seen at Memorial Hospital in Gulfport, where she reported that her ankle was so painful that she could not touch it. On that date, the emergency room physician noted that the ankle was swelling. Ms. Jackson reported that she had experienced worsening pain over the last two months, and she described her pain as 7 out of 10, and that it increased with walking.
Ms. Jackson testified that she had attempted to find work, but because of her ankle injury, she found it difficult to stand on her feet for long periods of time. She stated that she does not have a car, and that her ankle swells when she walks too much looking for work. Ms. Jackson said that, although she thinks that she can work part-time, no one would hire her due to her ankle because "they say [she's] a risk." Ms. Jackson testified that although her prior work included housekeeper, welder, pipefitter, painter, and janitor, which required her to be on her feet for long periods of time, she now cannot put a lot of weight on her ankle. Ms. Jackson's eleventh-grade education further restricts her employability. See Peveto v. WHC Contractors , 630 So.2d 689, 693 (La. 1994).
The WCJ stated that she "believe[d] Angela Jackson when she testified that she attempted to secure employment but [was] unable to because of her injury." The WCJ was not clearly wrong in finding that Ms. Jackson established by a preponderance of the evidence that she was unable to earn 90 percent of the wages she was earning at the time of the injury.
*177 After the burden shifted, Employers failed to come forward with information about employment offered to Ms. Jackson or available to Ms. Jackson in a reasonable geographic region. Accordingly, the WCJ was not manifestly wrong in awarding Ms. Jackson SEBs.
Assignment of Error No. 4: Medical Bills
Employers argued in their Motion for New Trial that Ms. Jackson was not entitled to an award of $92,278.80 in medical expenses because Ms. Jackson received benefits from Medicaid which were used to treat her injuries from the October 22, 2014 accident. Employers argue that any claim against them for payment of medical expenses was extinguished by the Medicaid payment.
When the WCJ denied Employers' Motion for New Trial, the WCJ stated in her Reasons for Judgment that, in the January 30, 2017 original judgment, she had not awarded any medical expenses directly to Ms. Jackson. The WCJ also referred to her original judgment, in which she decreed that Employers were liable to reimburse Medicaid for all amounts paid for services rendered to Ms. Jackson as a result of the accident. The WCJ cited La. R.S. 23:1212(B), which provides:
Payments by Medicaid or other state medical assistance programs shall not extinguish these claims and any payments made by such entities shall be subject to recovery by the state against the employer or insurer . (Emphasis added).
This statute gives Medicaid and other state agencies the right to recover from the employer any payments made.[5] Blair , 01-2211, p. 17, 818 So.2d at 1052. The WCJ correctly found that Ms. Jackson was not entitled to direct payment of medical benefits to her. The WCJ also properly ordered Employers to reimburse Medicaid for the amount it paid. This assignment of error is without merit.
Assignment of Error No. 5: Penalties and Attorney's Fees
"A workers' compensation claimant is entitled to penalties and attorney's fees if benefits are withheld arbitrarily, capriciously, or without probable cause by employer." Janneck v. LWCC , 12-0316, p. 6 (La. App. 4 Cir. 10/17/12), 102 So.3d 239, 243 ; La. R.S. 23:1201 ; La. R.S. 23:1201.2. According to this Court:
In determining whether an employer acted arbitrarily, capriciously or without probable cause in denying payment of compensation and medical benefits to trigger the imposition of attorney fees, arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation.
Id.
Penalties and attorney's fees, however, are precluded if the claim is "reasonably controverted." La. R.S. 23:1201(F)(2).
Employers contend that Ms. Jackson was not entitled to penalties and attorney's fees because Ms. Jackson's workers' compensation claim was reasonably controverted. La. R.S. 23:1201(F)(2). "A claim is reasonably controverted when the employer has sufficient factual and/or medical information to reasonably counter *178 evidence presented by the claimant." Thibodaux v. Grand Isle Shipyard, Inc. , 16-0583, p. 18 (La. App. 4 Cir. 12/21/16), 207 So.3d 459, 471. As this Court has found:
"To determine whether a claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether an employer or its insurer engaged in a non-frivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time it refused to pay all or part of the benefits owed."
Id. , 16-0583,p. 19, 207 So.3d at 471-72 (quoting Verges v. AmTrust N. Am. Community Leaders Advocacy for Success , 16-0203, p. 5 (La. App. 4 Cir. 8/31/16), 198 So.3d 1267, 1271 ). To reasonably controvert a claim, employers must demonstrate that they made reasonable efforts to ascertain the worker's exact condition before denying benefits. Seal v. Sewerage & Water Bd. of New Orleans , 03-0880, p. 8 (La. App. 4 Cir. 9/17/03), 857 So.2d 1065, 1070. "An employer also has a duty to investigate and make every reasonable effort to assemble and ascertain whether a claim is compensable before denying benefits." Janneck, 12-0316, p. 3, 102 So.3d at 241.
"Whether an employer has failed to reasonably controvert a claim is a question of fact and is subject to the manifest error standard of review." Thibodaux , 16-0583, p. 19, 207 So.3d at 471.
Employers contend that Ms. Jackson's claim was reasonably controverted because Employers reasonably relied on: (1) Ms. Tolito's representation that Ms. Jackson was not employed by Tolito at the time of the accident; and (2) the lack of any evidentiary documents that would support a different conclusion. We disagree.
The WCJ found Ms. Jackson more credible than Ms. Tolito, who said that Ms. Jackson was in the store as a shopper, and not as an employee. The WCJ also took note that Ms. Tolito could provide no further evidence that Ms. Jackson was a customer on the night of October 22, 2014. The WCJ pointed out that, although counsel for Employers referred to a videotape that purportedly showed that Ms. Jackson was shopping, the videotape was not introduced at trial. The WCJ further stated that "[i]t would have been helpful if the other individual present on the night of October 22, 2014 would have provided testimony as to the events occurring that night and the status of [Ms.] Jackson's employment with ... Tolito."[6]
Other than Ms. Tolito's discredited testimony, Employers have failed to produce any testimony to reasonably controvert Ms. Jackson's workers' compensation claim. Employers also failed to produce any documentation indicating that an investigation of the incident occurred. As such, we find that the WCJ was not clearly wrong in awarding Ms. Jackson $2,000.00 in penalties for failure to pay medical benefits, and $2,000.00 in penalties for failure to pay indemnity benefits. We further find the WCJ was not manifestly erroneous in awarding Ms. Jackson $3,000.00 in attorney's fees for the arbitrary and capricious denial of Ms. Jackson's claim.
CONCLUSION
In this matter, conflicting evidence was presented on the issue of whether a work-related accident occurred. The WCJ resolved this conflict in Ms. Jackson's favor.
*179 Based on our review of the record, we cannot say the WCJ was clearly wrong in finding that Ms. Jackson proved by a preponderance of the evidence that she sustained a work-related accident and injury.
We also find the WCJ did not manifestly err in awarding TTD benefits, SEBs, and penalties and attorney's fees based on Employers' arbitrary and capricious denial of Ms. Jackson's claim. We also find no error in the WCJ's judgment directing Employers to reimburse Medicaid for the amount it paid for medical services rendered to Ms. Jackson. Thus, we affirm the WCJ's judgments in their entirety.
AFFIRMED
BELSOME, J., CONCURS IN RESULT

The record shows that Family Dollar had a janitorial contract with S & S. S & S, in turn, entered into a subcontract with SMS for the work. The WCJ found that Tolito was a subcontractor of SMS.

Corroboration of a claimant's testimony may be provided by the testimony of fellow workers, spouses, friends, and by medical evidence. Ardoin v. Firestone Polymers, L.L.C. , 10-0245, p.5 (La. 1/19/11), 56 So.3d 215, 219.

We also note that, at trial, Ms. Jackson testified that Ms. Tolito picked up her and Mr. Mays at their Mississippi apartment on the day of the accident and drove them to New Orleans. Ms. Jackson also testified that Ms. Tolito drove her to the hospital after the accident, and gave Ms. Jackson $200.00 in cash as "pay" when she got out of surgery. This is further circumstantial evidence that Ms. Jackson was in the course and scope of her employment by Tolito when the accident occurred. See Baker v. City of New Orleans , 555 So.2d 659, 661 (La. App. 4th Cir. 1989).

An antalgic gait is "[a] gait pattern specifically modified to reduce the amount of pain a person is experiencing[.]" Antalgic Gait , McGraw-Hill Concise Dictionary of Modern Medicine (2002), https://medical-dictionary.thefreedictionary.com/antalgic+gait (last visited October 11, 2018).

La. R.S. 23:1212 prior to its amendment effective August 15, 2001, provided, in part:
Payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, of medical expenses that are owed under this Chapter shall extinguish the claim against the employer or insurer for those medical expenses.... ( Emphasis added.)

Although the WCJ does not identify that individual, Ms. Tolito testified that her daughter (who worked for Tolito) was in the store on the night of the accident.