923 So.2d 709 (2005)
Francile NELSON
v.
WINDMILL NURSERY OF LOUISIANA, L.L.C.
No. 2004 CA 1941.
Court of Appeal of Louisiana, First Circuit.
September 23, 2005.
*711 Daniel Steven Wanko, Jr., Slidell, Counsel for Plaintiff/Appellee Francile Nelson.
Robert T. Lorio, Covington, Counsel for Defendant/Appellant Windmill Nursery of Louisiana.
Before: CARTER, C.J., DOWNING and GAIDRY, JJ.
DOWNING, J.
Defendant-Appellant, Windmill Nursery of Louisiana, L.L.C. (Windmill), appeals a judgment rendered by the Office of Workers' Compensation (OWC) awarding Francile Nelson (Nelson) attorney fees and penalties. The basis for these awards was Windmill's failure to give approval for Nelson to be seen by a doctor following an alleged work-related accident. For the following reasons we affirm the judgment of the OWC.

FACTS AND PROCEDURAL HISTORY
At the time of the alleged accident, Nelson had been a Windmill employee for seven years. Nelson was an irrigation specialist, and her duties included spraying a combination of chemicals into large tanks. While performing this duty, she was required to wear a protective suit.
Nelson claims that on June 10, 2004, while spraying the chemicals into the tanks, she experienced intense itching and pain beneath her protective suit. She testified that she informed her immediate supervisor and was told to go home to shower and return to work. Nelson testified that she followed these instructions, but after returning to work that afternoon, she was still itching all over. Nelson said that her immediate supervisor suggested she consult a physician, but the general manager overheard the conversation and overruled that suggestion. Nelson testified that he emphatically said, "No she's not going to the doctor." Nelson testified that he accused her of either not wearing the protective suit properly or not knowing how to spray. Nelson testified that when she returned to work, and complained about the problem again, she was handed a tube of cortisone cream and told to apply it. Nelson testified that when she put the cream on her legs, the hair on her legs came off in her hand. Nelson testified that her request to consult a physician was refused.
Further, Nelson testified that she was in intense pain that night, so she went to the LSU Medical Center emergency room where she could receive free care. Nelson testified that after a four-hour wait, she was treated. The diagnosis was a possible acute allergic reaction to Cornerstone and Millennium Eltra herbicides. The attending nurse gave Nelson a written receipt of this diagnosis, an excuse from work, and enough medication for a week.
The itching persisted, and on June 21 Nelson returned to LSU Medical Center, where she was advised to see a dermatologist. Nelson said that she immediately *712 informed Windmill of her need, but Windmill refused authority to see this specialist.
On June 24, 2004 Nelson filed a Disputed Claim for Compensation alleging that she sustained a work-related accident. Simultaneously, she filed a Motion for Expedited Hearing to compel Windmill to authorize medical treatment. The OWC determined that Windmill failed to authorize such medical treatment for Nelson, which failure was held to violate LSA-R.S. 23:1121 B(1). Nelson was awarded a penalty of $50.00 per day from the date of the accident, totaling $1,600.00, for the unreasonable delay, and $2,000.00 in attorney fees pursuant to LSA-R.S. 23:1201 F. The judgment was signed and subsequently designated as final.
Windmill appeals the OWC judgment, claiming the award of attorney fees to be obviously excessive for the amount of work required and that any award of damages was premature on the grounds that a compensable injury was not yet shown when judgment was rendered.

ANALYSIS
LSA-R.S. 23:1121 A provides that an injured employee shall submit to examination by a physician provided and paid for by the employer as soon after the accident as demanded. LSA-R.S. 23:1121 B(1) provides that the employee shall have the right to select one treating physician in any field or specialty. An employer's refusal to authorize reasonable and necessary medical treatment for an injured employee may justify an award of penalties and attorney fees. LSA-R.S. 23:1201 F. See also Authement v. Shappert Engineering, 02-1631, p. 8 (La.2/25/03), 840 So.2d 1181, 1186, where the court concluded in a similar context that failure to authorize medical treatment equates to failure to provide benefits and shall result in the assessment of penalties and reasonable attorney fees under LSA-R.S. 23:1201 F. Windmill's act of ordering Nelson to go home and take a shower combined with its subsequent inaction regarding authorization of medical treatment after she expressed a desire to see a doctor is in violation of these statutes.
We acknowledge that Windmill's version of events contradicts Nelson's version. However, where there are two permissible views of the evidence, a factfinder's choice between them can virtually never be manifestly erroneous or clearly wrong. Stobart v. State, 617 So.2d 880, 882 (La.1993). The OWC clearly chose to believe Nelson's description of the events over that of Windmill. The OWC's credibility determination favoring Nelson's version of how Windmill handled her alleged injury is entitled to deference, and its judgment is not manifestly erroneous or clearly wrong.

PENALTIES
Windmill contends in its first assignment of error that the award of penalties for the delay is premature, as causation for Nelson's alleged accident has not been proved. We disagree because causation of the alleged accident is not an issue in determining whether an employee has been deprived of the right to see a treating physician of her choice.
LSA-R.S. 23:1121 B(1) makes mandatory an employee's right to select a treating physician. This statute sets no timeframe for exercising a right to select a treating physician, nor does it require that any prior medical examination be conducted. Further, it does not require proof of causation of the accident.
Here, Nelson clearly indicated her desire to see a physician on the day of the incident. When Windmill refused to authorize her request, Nelson elected to take herself to the LSU Medical Center where *713 she was eligible for free care, since she had neither insurance nor sufficient funds.
Windmill's failure to authorize medical treatment to Nelson despite her request implicated the penalty statute, LSA-R.S. 23:1201, which provides in pertinent part:
F. Failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation of medical benefits remain unpaid of such consent is withheld.
(Emphasis added.)
Based upon the clear language of the statute, a penalty and attorney fee can be imposed for this failure to authorize treatment except where the claim is reasonably controverted. LSA-R.S. 23:1201 F(2); Authement, 02-1631 at p. 8, 840 So.2d at 1186. Windmill alleges that the penalties were awarded before it had the opportunity to controvert the claim. We disagree.
In Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885, the Louisiana Supreme Court discussed the meaning of reasonably controverting a claim. The court stated that generally, "in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits." Id., 98-1063 at p. 9, 721 So.2d at 890. It further discussed the issue, as follows:
Thus, to determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed. This definition is in accord with that presently used by the lower courts to determine whether penalties and attorney fees are owed. Id.

Therefore, the issue before us is not whether a compensable injury in fact occurred, but whether Windmill had any legal basis for not allowing Nelson to procure medical attention following her apparent allergic reaction. Causation of Nelson's injury is irrelevant to making a determination of whether Windmill had a legal basis under LSA-R.S. 23:1121 B for not authorizing Nelson to receive treatment for that injury, which is the issue in dispute. Windmill does not reasonably controvert the fact that it initially denied Nelson's right to select and see a treating physician of her choice. Therefore, LSA-R.S. 23:1201 F(2) is inapplicable to exclude the penalties under LSA-R.S. 23:1201 F.
The LSA-R.S. 23:1121 requirement for the employer to consent to the selection of a physician allows for the imposition of penalties and attorney fees, pursuant to LSA-R.S. 23:1201(F). Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277, 280-281 (La.1993). Therefore, the WCC did not err in finding that Windmill is responsible for penalties. These penalties are not for Windmill's failure to pay medical expenses and weekly benefits for a work-related injury, but rather attributable to its failure to fulfill its threshold statutory duty to allow Nelson to select a treating physician.

NOTICE
In its second assignment of error, Windmill alleges that the OWC erred in deciding an issue of penalties and attorney fees under La. R.S. 23:1201(F) via a summary *714 proceeding before Windmill was served and before it had an opportunity to investigate Nelson's claim of injury. We conclude that this argument is without merit.
Windmill's representatives were present and participated at the proceeding, so the lack of service is not an issue meriting reversal. Further, the statutory scheme allows an employee a summary proceeding when denied his or her right to an initial physician of choice. LSA-R.S. 23:1121 B(1).
The issue before the court in the summary proceeding was not based on whether a compensable injury had in fact occurred. The lack of opportunity to investigate or conduct discovery is irrelevant to reaching a conclusion as to whether Windmill was remiss in not authorizing Nelson to be examined by her choice of physician pursuant to LSA-R.S. 23:1121 B(1). Brown, 98-1063 at p. 9, 721 So.2d at 890.
Windmill had the opportunity to controvert whether it denied Nelson her choice of a physician. Windmill was not denied the right. Windmill's second assignment of error is without merit.

ATTORNEY FEES
An award of attorney fees under LSA-R.S. 23:1201 F is allowed for a violation of LSA-R.S. 23:1121 B(1). The purpose of such an award is to discourage indifference or undesirable conduct by employers. Williams v. Rush Masonry, Inc., 98-2271, pp. 8-9 (La.6/29/99), 737 So.2d 41, 46. Windmill's inaction appears to manifest the sort of indifference to be discouraged by an award of attorney fees. Therefore, the OWC's decision to award Nelson attorney fees was not manifestly erroneous or clearly wrong.
In its third assignment of error, Windmill contends the OWC abused its discretion in awarding $2,000.00 in attorney fees, which Windmill considers to be a higher award than is proper for the amount of actual work involved in pursuing Nelson's case. The amount of the attorney fee award is to be reviewed by the appellate court using the "abuse of discretion" standard. Lane Memorial Hospital v. Gay, 03-0701, p. 7 (La.App. 1 Cir. 2/23/04), 873 So.2d 682, 686.
In this case the OWC had ample opportunity to observe the skill and quality of preparation of Nelson's attorney. The hearing was relatively lengthy and Nelson's attorney obviously had well prepared arguments. He filed pleadings, exhibits and a memorandum of law. The OWC could, through experience, reasonably judge the amount of time that would be necessary to present the case and the value of that time. We conclude the award is reasonably supported by the record and the OWC did not abuse its discretion in determining the amount awarded in attorney fees. Therefore, the award shall remain undisturbed. This assignment of error is without merit.

DECREE
The OWC determined, based on sufficient factual evidence, that Windmill failed to comply with its duty to its employee to authorize medical treatments under LSA-R.S. 23:1121 B(1), and that this failure warranted an award of both penalties and attorney fees as allowed under LSA-R.S. 23:1201 F. We find no error in these findings. Therefore, we affirm the judgment of the OWC, including its award of $1,600.00 in penalties and $2,000.00 in attorney fees to Francile Nelson. Costs are assessed to Windmill Nursery of Louisiana, L.L.C.
AFFIRMED.