STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

NADINE EWING

VERSUS

FREDERICK M. HILBURN, II


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DIST. 02
PARISH OF RAPIDES, NO. 10-05275
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and James T. Genovese, Judges.


REVERSED, RENDERED, AND REMANDED.


Eugene A. Ledet, Jr.
Dalrymple & Ledet LLC
P. O. Drawer 14440
Alexandria, LA 71315
(318) 442-1818
COUNSEL FOR PLAINTIFF/APPELLANT:
        Nadine Ewing

Kim Purdy Thomas
Patrick F. Cole
Mayer, Smith & Roberts, L.L.P.
1550 Creswell Ave.
Shreveport, LA 71101
(318) 222-2135
COUNSEL FOR DEFENDANTS/APPELLEES:
        Frederick M. Hilburn, II, DDS and Continental Casualty Company

**PETERS, J.**

Nadine Ewing appeals from the workers' compensation judge's (WCJ's) denial of her request for penalties and attorney fees based on her employer's refusal to approve her treatment by the orthopedic surgeon of her choice. For the following reasons, we reverse the WCJ judgment, render judgment in Mrs. Ewing's favor, and remand this matter for further proceedings.

## DISCUSSION OF THE RECORD

Mrs. Ewing claims to have suffered an injury to her left knee on Tuesday, March 9, 2010, while working in the autoclave chamber of her employer, Dr. Frederick M. Hilburn, II, DDS. She was moving sterile instruments from the non-sterile side of the chamber to the sterile side. With a tray of instruments in her hands, she twisted to one side, which caused a dislocation of the patella of her left knee. Mrs. Ewing stated that she bent down and pushed the patella back into place with her hand, and thereafter, she related the incident to two other employees, Alayna McKinney and Michelle Trahan. She completed the workday and worked the next day. On Thursday of that week, Mrs. Ewing and her daughter traveled to San Antonio, Texas, to watch her son compete in an R.O.T.C. competition. During the trip, she began experiencing soreness in her left knee. Mrs. Ewing returned to work on Tuesday, March 16.

On Wednesday, March 17, 2010, Dr. Hilburn noticed that Mrs. Ewing was limping on her left leg and inquired as to the cause. She told him about the incident the previous Tuesday, but stated that she did not think it would amount to anything. However, her knee continued to worsen until she sought medical treatment at Citizens Rural Clinic in Columbia, Louisiana. The nurse practitioner at Citizens Rural Clinic recommended that she undergo an MRI of her knee and initiated a referral to an orthopedic surgeon at E. A. Conway Medical Center in

Monroe, Louisiana. In addition to treatment at Citizens Rural Clinic and E. A. Conway Medical Center, Mrs. Ewing also sought medical care at the Huey P. Long Health Medical Center in Pineville, Louisiana.[1]

On her April 8, 2010 visit to Citizens Rural Clinic, the nurse practitioner placed Mrs. Ewing on light-duty work status. However, when her situation did not improve, on April 19, 2010, the nurse practitioner placed her on a no-work status and instructed her to use crutches. Thereafter, Dr. James P. Taylor at Huey P. Long Health Medical Center began seeing Mrs. Ewing. He continued her on the no-work status for two weeks at a time. After the June 9, 2010 examination, Dr. Taylor extended her no-work status indefinitely pending a follow up with him after she underwent an MRI of her knee.

Mrs. Ewing did not return to work with Dr. Hilburn after April 19, 2010, but did express her desire for compensation benefits. On April 21, 2010, she gave a recorded statement to Gayle Timbs, a claim specialist with CNA, the claims administrator for Continental Casualty Company (Continental Casualty), Dr. Hilburn's insurer. On May 3, 2010, Mrs. Ewing received a letter from Ms. Timbs, which read in pertinent part as follows:

> I have completed the investigation of the claim for your left knee. It has been found that this injury did not arise out of and in the course and scope of the employment, therefore, Workers' Compensation benefits are being denied.

The letter did not explain the scope of the investigation or the specific reason the insurer was denying the claim.

On June 2, 2010, counsel for Mrs. Ewing informed Ms. Timbs that he was representing Mrs. Ewing in her workers' compensation matter and that he was

---

[1]Both E. A. Conway Medical Center and Huey P. Long Health Medical Center are part of the LSU Health Care Services Division. Mrs. Ewing sought care at these public facilities because she could not afford medical care otherwise.

seeking approval for her to see Dr. Christopher M. Rich, an Alexandria, Louisiana orthopedic surgeon, as soon as possible. Apparently, based on the results of its investigation, Continental Casualty refused to authorize Dr. Rich's examination and evaluation. On June 16, 2010, Mrs. Ewing filed a disputed claim asserting a number of claims, including the failure to authorize a medical evaluation and treatment by Dr. Rich

Mrs. Ewing sought and received an expedited hearing pursuant to La.R.S. 23:1121, to resolve the medical authorization. At the conclusion of the August 16, 2010 expedited hearing, the WCJ recognized Mrs. Ewing's right to see Dr. Rich, but delayed judgment on the issue of penalties and attorney fees. The parties then submitted these issues to the WCJ on briefs and on the transcript of the August 16, 2010 hearing. On June 2, 2011, the WCJ rendered oral reasons rejecting Mrs. Ewing's request for penalties and attorney fees.

On June 21, 2011, the WCJ signed a judgment on this issue, and this appeal followed that judgment. In her appeal, Mrs. Ewing raises one assignment of error in asserting that the WCJ factually and legally erred in denying her claim for penalties and attorney fees.

**OPINION**

Just as in tort cases, a WCJ's factual findings are reviewed on appeal pursuant to the manifest error—clearly wrong standard. *Poissenot v. St. Bernard Parish Sheriff's Office*, 09-2793 (La. 1/9/11), 56 So.3d 170. However, whether the WCJ utilized the appropriate standard in denying penalties and attorney fees to Mrs. Ewing, based on the denial by Dr. Hilburn and Continental Casualty of her request to see the orthopedic surgeon of her choice, is a question of law.

3

As pointed out in *Nelson v. Windmill Nursery of Louisiana, L.L.C.*, 04-1941, pp. 3-4 (La.App. 1 Cir. 9/23/05), 923 So.2d 709, 712, *writ denied*, 05-2294 (La. 3/10/06), 925 So.2d 516:

> LSA R.S. 23:1121 A provides that an injured employee shall submit to examination by a physician provided and paid for by the employer as soon after the accident as demanded. LSA-R.S. 23:1121 B(1) provides that the employer shall have the right to select one treating physician in any field or specialty. An employer's refusal to authorize reasonable and necessary medical treatment for an injured employee may justify an award of penalties and attorney fees. LSA-R.S. 23:1201 F. *See also Authement v. Shappert Engineering*, 02-1631, p. 8 (La. 2/25/03), 840 So.2d 1181, 1186, where the court concluded in a similar contest that failure to authorize medical treatment equates to failure to provide benefits and shall result in the assessment of penalties and reasonable attorney fees under LSA-R.S. 23:1201 F.

The first circuit went on to hold that the employer's obligation to authorize reasonable and necessary medical treatment for an injured employee does not rise or fall based on proof of causation. *Id.* In summarizing the issue before it, the first circuit stated the following:

> Based upon the clear language of the statute, a penalty and attorney fee can be imposed for this failure to authorize treatment except where the claim is reasonably controverted. LSA-R.S. 23:1201 F(2); *Authement*, 02-1631 at p. 8, 840 So.2d at 1186. Windmill alleges that the penalties were awarded before it had the opportunity to controvert the claim. We disagree.
>
> In *Brown v. Texas-LA Cartage, Inc.*, 98-1063 (La.12/1/98), 721 So.2d 885, the Louisiana Supreme Court discussed the meaning of reasonably controverting a claim. The court stated that generally, "in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits." *Id.* 98-1063 at p. 9, 721 So.2d at 890. It further discussed the issue as follows:
>
> > Thus, to determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused

4

> to pay all or part of the benefits allegedly owed. This definition is in accord with that presently used by the lower courts to determine whether penalties and attorney fees are owed. *Id.*

*Id.* at 713.

The first circuit described the issue before it to not be whether a compensable injury had occurred, but whether the employer and/or its insurer had a legal basis for not allowing the claimant to procure medical attention. *Id.* Thus, the first circuit recognized that the award of a penalty and attorney fees will only be excused in situations where the employer has reasonably controverted the employee's claim, regardless of the ultimate causation outcome. Likewise, the ultimate issue before us here is not whether Mrs. Ewing suffered a compensable injury, but, rather, whether Dr. Hilburn and Continental Casualty had any legal basis for refusing to allow her to procure medical treatment following her alleged knee injury. However, before we can reach that issue, we must first evaluate the burden of proof imposed on Mrs. Ewing by the WCJ.

The burden of proof rests with Dr. Hilburn and Continental Casualty to establish that they reasonably controverted Mrs. Ewing's request to see Dr. Rich. *Moore v. Transmissions, Inc.*, 41,472 (La.App. 2 Cir. 9/27/06), 940 So.2d 694. Although the WCJ initially correctly stated that penalties and attorney fees would not lie in instances where the employee's claim was reasonably controverted or where the nonpayment resulted from conditions beyond the employer's control, it placed the burden of proof on Mrs. Ewing and applied the wrong standard in rendering judgment.

In his oral reasons for judgment, the WCJ stated, in pertinent part, that "the Court finds that *since the burden is on Ms. Ewing* to demonstrate that the actions of the employer and the insurer were *unreasonable or arbitrary and capricious*, that

5

she failed in meeting that burden of proof and her claims for penalties and attorney's fees are denied." (Emphasis added.) Having concluded that the WCJ committed legal error in denying Mrs. Ewing's claims, we must conduct a *de novo* review of the record. *Moreno v. Landaverde Constr. LLC*, 10-471 (La.App. 5 Cir. 12/14/10), 53 So.3d 687.

In conducting a *de novo* review, we conclude that Dr. Hilburn and his insurer did not reasonably controvert Mrs. Ewing's request for medical care with Dr. Rich. The evidence establishes that Dr. Hilburn did not become aware of Mrs. Ewing's claimed March 9, 2010 injury until Wednesday, March 17, 2010, when he observed her limping at work. When questioned by Dr. Hilburn, Mrs. Ewing immediately related the incident in the autoclave chamber as well as the specific mechanics of the injury itself. Additionally, Mrs. Ewing informed him that there were no witnesses to the accident, but that she had related the fact of the accident and injury to her two coworkers. Mrs. Ewing informed her employer that she did not believe the injury was severe, and she continued working.

Although the record is not entirely clear when it occurred, sometime after his conversation with Mrs. Ewing, Dr. Hilburn questioned the two coworkers concerning what Mrs. Ewing may have related to them regarding the accident. Both coworkers informed the doctor that they did not recall any conversation concerning Mrs. Ewing's alleged accident on March 9, 2010. He then properly turned this matter over to his workers' compensation insurer, Continental Casualty.

The investigation performed by CNA, Continental Casualty's claims administrator, appears to be nothing more than the taking of Mrs. Ewing's statement wherein she repeated the particulars of the accident and provided Ms.

Timbs with information concerning her medical care at Citizens Rural Clinic.[2] There is no evidence in that record to indicate that Ms. Timbs did anything toward acquiring medical information on Mrs. Ewing. Had she done so, she would have discovered that the accident history Mrs. Ewing provided Dr. Hilburn was basically the same as that provided to the medical care givers, and that no medical provider suggested that the related accident was inconsistent with her complaints. Instead, Continental Casualty seems to have based its decision to deny benefits solely on the fact that Mrs. Ewing traveled to San Antonio, Texas, the weekend after the accident. Although causation is not the issue, they jumped to the conclusion that causation did not exist and based their refusal on what little information they possessed to deny her request.

Considering the record before us, we find that no legal basis existed for Dr. Hilburn and Continental Casualty to refuse Mrs. Ewing's request to see Dr. Rich. Accordingly, we find that Dr. Hilburn and Continental Casualty failed to reasonably controvert Mrs. Ewing's request to see Dr. Rich. Thus, we reverse the WCJ's judgment denying her request for penalties and attorney fees and render judgment assessing Dr. Hilburn and Continental Casualty with $2,000.00[3] in penalties and $5,000.00 in attorney fees based on their failure to authorize Mrs. Ewing's treatment with Dr. Rich, as provided by La.R.S. 23:1121(B).

---

[2]Mrs. Ewing even provided Ms. Timbs with the telephone number of Citizens Rural Clinic during her recorded interview.

[3]Although Mrs. Ewing is entitled to a penalty of $50.00 per day for each day Dr. Hilburn refused her request to see Dr. Rich, the total $50.00 per day penalty may not exceed $2,000.00. La.R.S. 23:1201(F). Mrs. Ewing requested permission to see Dr. Rich on June 2, 2010, but was not granted permission to see him until August 16, 2010, for a total of seventy-six days. This would equal a penalty of $3,800.00, so the maximum amount which may be awarded to Mrs. Ewing is $2,000.00.

7

**DISPOSITION**

For the foregoing reasons, we reverse the judgment of the workers' compensation judge denying the request of Nadine Ewing for penalties and attorney fees based on the failure of Dr. Frederick M. Hilburn, II and Continental Casualty Company to authorize her to see Dr. Christopher M. Rich for medical evaluation and treatment. We render judgment in favor of Nadine Ewing and against Dr. Frederick M. Hilburn, II and Continental Casualty Company, awarding Nadine Ewing $2,000.00 in statutory penalties and $5,000.00 in attorney fees. We assess all costs of this appeal to Frederick M. Hilburn, II, DDS and Continental Casualty Company and remand this matter to the workers' compensation court for further proceedings.

**REVERSED, RENDERED, AND REMANDED.**