| | | |
|---|---|---|
| **GENEVA HEBERT** | * | **NO. 2019-CA-0412** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **THE FRESH MARKET, INC.** | * | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

* * * * * * *

<u>**CONSOLIDATED WITH:**</u>              <u>**CONSOLIDATED WITH:**</u>

**GENEVA HEBERT**                          **NO. 2019-C-0338**

**VERSUS**

**THE FRESH MARKET, INC.**


APPEAL FROM
THE OFFICE OF WORKERS' COMPENSATION
NO. 17-08263, DISTRICT "8"
Honorable Diane R. Lundeen, Workers' Compensation Judge
* * * * * *
**Judge Tiffany G. Chase**
* * * * * *
(Court composed of Judge Roland L. Belsome, Judge Paula A. Brown, Judge
Tiffany G. Chase)

Craig B. Mitchell
Kiana M. Mitchell
Michael S. Rodriguez
MITCHELL & ASSOCIATES, APLC
615 Baronne Street, Suite 300
New Orleans, LA 70113

      COUNSEL FOR PLAINTIFF/APPELLEE

Stephen W. Brooks, Jr.
Richard J. Voelker
PUGH, ACCARDO, HAAS, RADECKER & CAREY, LLC
Chase Center
3500 Highway 190, Suite 200
Mandeville, LA 70471

      COUNSEL FOR DEFENDANT/APPELLANT

**WRIT DENIED; JUDGMENT AFFIRMED**
**SEPTEMBER 18, 2019**

This is a workers' compensation case.  The defendant, The Fresh Market, Inc. (hereinafter "Fresh Market"), appeals the January 30, 2019 judgment of the Workers' Compensation Judge (hereinafter "WCJ") rendered in favor of the claimant, Geneva Hebert (hereinafter "Ms. Hebert").  On that same date, the WCJ issued a separate judgment excluding a witness' statement.  Consolidated with this appeal is Fresh Market's writ application seeking reversal of the WCJ's exclusion of that evidence.  For the reasons that follow, we deny the consolidated writ, affirm the judgment, and find the January 14, 2019 judgment on a motion for contempt is not properly before this Court for review.[1]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Hebert, an employee of Fresh Market, worked in the bakery of its St. Charles Avenue location.  On September 12, 2017, towards the end of her shift, Ms. Hebert was working with Erik Terluin (hereinafter "Mr. Terluin"), a baker for Fresh Market, who was showing her how to load a metal, rolling baker's rack with frozen dough.  The rack needed to be moved up a grated ramp and put in a walk-in cooler where the dough would defrost.  Ms. Hebert was positioned on the upper

---

[1] The WCJ issued a judgment on January 14, 2019, granting Ms. Hebert's motion for contempt. The motion for contempt was the subject of a second supervisory writ filed by Fresh Market.

side of the ramp, pulling the rack, with her back to the cooler. Mr. Terluin was on the lower side pushing the rack towards the cooler. In their efforts to move the rack, an incident occurred. The exact facts of the incident are contested by the parties. Ms. Hebert alleges the rack, and its contents, fell on top of her, knocking her to the floor, and causing her to sustain injuries to her back and left ankle. Conversely, Mr. Terluin alleges the rack did not fall and that only a couple of pans of bread fell to the floor. He was not aware of any injury to Ms. Hebert. After the incident, the two completed their duties and left for the day.

The following day, when the pain in her back and ankle persisted, Ms. Hebert reported the incident and her injuries to Fresh Market's management. Edward Woolsey (hereinafter "Mr. Woolsey"), an assistant store manager, filled out an incident report and obtained a written statement from Ms. Hebert. As Ms. Hebert's statement identified Mr. Terluin and Kelly Mosbacher (hereinafter "Ms. Mosbacher"), another bakery employee, as witnesses, Mr. Woolsey also obtained their statements. Fresh Market then reported the incident to its workers' compensation carrier, and Gallagher Bassett Services, Inc. (hereinafter "Gallagher Bassett"), the claims adjuster.

On September 18, 2017, Ms. Hebert noticed bruising on her back, thigh, buttocks, knee, and swelling in her ankle and went to the Touro Infirmary emergency room. She was diagnosed with a left ankle sprain and lumbar contusion, but given no restrictions in her ability to return to work.

Immediately after being discharged from Touro, Ms. Hebert went to the Veterans Administration ("VA") hospital for a second opinion. Diagnoses from an initial and follow up visit were consistent with the findings at Touro. Ms. Hebert was given crutches and a CAM (Controlled Ankle Movement) boot.

2

On November 7, 2017, Ms. Hebert treated with LA Health Solutions (hereinafter "LAHS"). Dr. Marco Rodriguez (hereinafter "Dr. Rodriguez"), an orthopedic spinal surgeon, examined Ms. Hebert and diagnosed her with thoracic facet syndrome and lumbosacral facet joint syndrome causing axial back pain. Dr. Rodriguez related her back and ankle injuries to the September 12, 2017 accident and determined that Ms. Hebert was unable to work in any capacity. Dr. Rodriguez also referred Ms. Hebert to Dr. Robert Bostick (hereinafter "Dr. Bostick") for her ankle injury.

On December 28, 2017, Ms. Hebert filed a Form 1008 alleging Fresh Market failed to pay wage benefits, authorize medical treatment, authorize an initial evaluation of her choice of Dr. Bostick to treat her ankle injury, and pay temporary total disability (hereinafter "TTD") benefits and supplemental earnings benefits (hereinafter "SEB"). Fresh Market answered the petition controverting the claim, arguing factual and legal bases. It later amended its answer to add a reconventional demand averring Ms. Hebert forfeited her rights to benefits by failing to disclose her history of left ankle injuries.

Ms. Hebert subsequently filed a "Motion to Compel Choice of Orthopedic Extremity Specialist" (hereinafter "motion to compel") due to Gallagher Bassett's failure to authorize the referral to Dr. Bostick. On March 14, 2018, the WCJ ruled in favor of Ms. Hebert.[2] Assessment of penalties and attorney's fees was deferred until the trial on the merits.[3] Despite this judgment, Gallagher Bassett did not pay

---

[2] Ms. Hebert was ultimately examined by Dr. Bostick on May 17, 2018, although, by that time, her ankle issues had substantially improved. Dr. Bostick gave a diagnosis of a sprained ankle agreeing with the previous diagnoses from Touro and the VA. He also diagnosed an "unspecified mononeuropathy of the left lower limb" and determined, as of the time he examined her, that Ms. Hebert was capable of performing light work duty.

[3] The judgment on the motion to compel was reduced to writing on May 7, 2018.

for Ms. Hebert's visit with Dr. Bostick which prompted Ms. Hebert to file a motion for contempt which was not adjudicated until after the trial on the merits.

Ms. Hebert continued her treatment at LAHS. Dr. Rodriguez recommended twelve orthopedic visits and made additional referrals for physical therapy for Ms. Hebert's lumbar and thoracic spine. On March 29, 2018, when Ms. Hebert had not reached her physical therapy goals, Dr. Rodriguez requested an additional eighteen physical therapy sessions. He further requested treatment and evaluation for Ms. Hebert's mid-thoracic back. Gallagher Bassett denied these requests stating the treatment was not related to an on the job injury. In May 2018, while Dr. Rodriguez concluded that Ms. Hebert had reached maximum medical improvement in her lumbar spine, her thoracic spine had not. He recommended additional therapy with the potential for injections.

Fresh Market's orthopedic expert, Dr. Robert Steiner (hereinafter "Dr. Steiner"), conducted an examination of Ms. Hebert on May 14, 2018. Although her lumbar back issues had mostly resolved, she still complained of ankle and thoracic back pain. Dr. Steiner also noted that Ms. Hebert did not inform him of a prior left ankle injury or indicate it in the medical history form he gave her to fill out.[4] On the same day as the examination, Dr. Steiner issued a report stating his opinion that Ms. Hebert "sustained [a] left ankle sprain and lumbar contusion as a result of the [September 12, 2017 accident]." Subsequent to his original report, Dr. Steiner issued an addendum wherein he changed his opinion of Ms. Hebert's injuries entirely.

---

[4] Ms. Hebert suffered a prior ankle injury while in the military in 2016 but had discontinued treatment for that ankle injury in July 2017.

The trial occurred on September 26, 2018. The parties stipulated Ms. Hebert's average weekly wage to be $239.25, with a corresponding minimum weekly compensation rate of $174.00. During the course of the trial, Fresh Market sought to introduce a written statement by Ms. Mosbacher contained in the incident report prepared by Mr. Woolsey. Ms. Hebert objected and the WCJ reserved ruling on the matter.

Four witnesses testified at trial: Ms. Hebert; Mr. Terluin; Whitney Plaisance, the claims adjuster; and Mr. Woolsey. Deposition testimony of Dr. Steiner and Dr. Rodriguez was introduced in lieu of live testimony.

Following the trial, the parties submitted post-trial briefs and the matter was taken under advisement. On January 30, 2019, the WCJ issued a written judgment finding, in relevant part, as follows:

- Ms. Hebert suffered injuries to her left ankle and back as a result of the September 12, 2017 accident;

- Ms. Hebert is entitled to TTD benefits from Nov 7, 2017 through May 1, 2018 in the amount of $4,374.86;

- Ms. Hebert is entitled to SEB for the periods of May 3 through May 3, 2018 in the amount of $729.68; June 2018 in the amount of $301.83; and July 2018 in the amount of $301.83;

- Ms. Hebert is awarded $2,000 in penalties and $3,000 in attorney's fees associated with her motion to compel;

- Ms. Hebert is denied an award of penalties and attorney's fees associated with her claim on the merits as Fresh Market controverted the claim based on its investigation; and

- Judgment is rendered against Fresh Market denying its reconventional demand alleging Ms. Hebert forfeited her benefits for willfully failing to disclose prior ankle injuries.

The order granting Fresh Market's suspensive appeal from this final judgment was signed by the WCJ on February 26, 2019.

5

On the same date of the January 30, 2019 final judgment on the merits, the WCJ issued a separate interlocutory judgment excluding Ms. Mosbacher's statement but allowing Fresh Market to proffer it on appeal. Fresh Market sought supervisory review of the exclusion and this Court granted the writ for the limited purpose of consolidating it with the pending appeal.

A second supervisory writ was filed by Fresh Market on April 15, 2019 regarding the judgment of contempt on Fresh Market's failure to pay for Dr. Rodriguez's referral to Dr. Bostick. Fresh Market incorporates argument on this writ as part of its fourth assignment of error.

## STANDARD OF REVIEW

In workers' compensation cases, appellate courts must apply the manifest error or clearly wrong standard of review to the factual findings of a WCJ. *Marti v. City of New Orleans*, 2012-1514, p. 16 (La.App. 4 Cir. 4/10/13), 115 So.3d 541, 552. This standard necessitates the application of a two-part test: 1) an appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court; and 2) an appellate court must further determine the record establishes that the finding is clearly wrong or manifestly erroneous. *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La. 1993). Thus, the question for a reviewing court is not whether the trial court's determination of fact was right or wrong, but whether it was reasonable. *Id.*

## DISCUSSION

Fresh Market presents five assignments of error for review in addition to its consolidated writ challenging the WCJ's exclusion of Ms. Mosbacher's written witness statement. In its first assignment of error, Fresh Market argues the WCJ erred by finding Ms. Hebert proved the occurrence of an accident that caused her

6

injury as defined by La. R.S. 23:1021(1). The second and third assignments of error challenge the WCJ's findings that Ms. Hebert is entitled to TTD benefits and SEB, respectively. In its fourth assignment of error, Fresh Market argues the WCJ erred in granting a $2,000 penalty and $3,000 in attorney's fees associated with Ms. Hebert's motion to compel and an additional $5,000 penalty associated with Ms. Hebert's motion for contempt. In its fifth assignment of error, Fresh Market contends the WCJ erred by denying its reconventional demand and finding Ms. Hebert did not forfeit her benefits by willfully misrepresenting her medical history. Finally, Ms. Hebert filed an answer to the appeal requesting additional attorney's fees for the preparation of the appellate portion of this case. We address these issues separately below.

### CONSOLIDATED WRIT: EXCLUSION OF MS. MOSBACHER'S STATEMENT

The decision to admit or exclude evidence rests within the sound discretion of a WCJ and should not be reversed absent manifest error. *Reinhardt v. City of New Orleans (NOPD)*, 2009-1116, p. 16 (La.App. 4 Cir. 1/13/10), 30 So.3d 229, 239. Despite the relaxed evidentiary standards mandated by La. R.S. 23:1317 in workers' compensation hearings, a WCJ's decision to admit or exclude hearsay evidence must be made on a case-by-case basis given the particular facts and circumstances. *Chaisson v. Cajun Bag & Supply, Co.*, 1997-1225, pp. 12-13 (La. 3/4/98), 708 So.2d 375, 382. At the very least, hearsay evidence must be "competent evidence" that has some degree of reliability and trustworthiness and of the type that reasonable persons would rely upon. *Id*.

Fresh Market argues Ms. Mosbacher's written statement should be admissible as it was contained in Ms. Hebert's employee file and is thus subject to the business records exception under La. C.E. art. 803(6). Fresh Market contends

7

this is supported by Mr. Woolsey's testimony regarding the procedure he follows in taking witness statements once they have been identified by an employee in an accident report.

Ms. Hebert counters that although Mr. Woolsey testified to receiving Mr. Terluin's statement, he never testified to receiving Ms. Mosbacher's statement. Moreover, Ms. Mosbacher's statement was never presented to Mr. Woolsey for identification at trial. Ms. Hebert further argues that, unlike Mr. Terluin's statement which is written on a company form, Ms. Mosbacher's statement is written on a plain piece of paper with no identifying information. Additionally, Ms. Hebert is not mentioned by name in Ms. Mosbacher's statement.

The WCJ's decision to exclude the statement is reflected in the WCJ's comments during trial. After he testified, the WCJ stated "Mr. Woolsey didn't testify that he received [Ms. Mosbacher's statement]. So how do we get around this now that you've released [Mr. Woolsey]?" Given this lack of foundation, we find the WCJ was within her discretion to exclude Ms. Mosbacher's statement. Thus, the consolidated writ is denied.

### ASSIGNMENT OF ERROR #1: OCCURRENCE OF AN ACCIDENT AND CAUSATION OF INJURY

"As a threshold requirement, a worker in a compensation action must establish 'personal injury by accident arising out of and in the course of his employment.'" *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357, 360 (La. 1992) (quoting La. R.S. 23:1031). An accident is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of injury which is more than simply a gradual deterioration or progressive

8

degeneration." La. R.S. 23:1021(1). A successful claimant must therefore show the required chain of causation: the employment causes the accident, the accident causes the injury, and the injury causes disability. *Buxton v. Iowa Police Dept.*, 2009-0520, pp. 11-12 (La. 10/20/09), 23 So.3d 275, 283.

A claimant bears the burden of proving personal injury from an accident by a preponderance of the evidence. *Bruno*, 593 So.2d at 361. In meeting the required burden of proof, a worker's testimony alone may be sufficient provided two elements are satisfied: 1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and 2) the worker's testimony is corroborated by the circumstances following the alleged incident. *Id.*

### *Existence of Evidence Casting Doubt on Worker's Version of the Incident*[5]

The WCJ made a credibility determination and chose to believe Ms. Hebert's version of the accident, finding that "Mr. Terluin's credibility was seriously damaged at trial." Fresh Market argues this credibility determination was not reasonable. We disagree.

"Where the fact-finder's determination is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous." *Purvis v. Grant Parish Sch. Bd.*, 2013-1424, p. 4 (La. 2/14/14), 144 So.3d 922, 926. It is well-settled that only the trier of fact "can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989).

---

[5] Our analysis of the first *Bruno* element incorporates Fresh Market's challenge of the trial court's credibility determination of Mr. Terluin's testimony.

The WCJ principally relied on inconsistencies in Mr. Terluin's version of events in questioning his credibility.[6]  In an affidavit admitted into evidence at the summary judgment hearing, Mr. Terluin attested to the following: (1) the baker's rack did not fall on Ms. Hebert; (2) Ms. Hebert did not fall to the ground; and (3) Ms. Hebert was in his sight at all times during the incident.  In contrast, during his trial testimony, Mr. Terluin conceded that his vision of Ms. Hebert was somewhat obstructed given the nature of the loaded baker's rack.  He also admitted it was possible that Ms. Hebert fell and hit something and that he did not see it.  The inconsistencies of Mr. Terluin's testimony are apparent.  Thus, we find that the WCJ did not err in her determination that Ms. Hebert's testimony was more credible than Mr. Terluin's testimony.

### Corroborating Circumstances

Fresh Market further contends the WCJ erred in determining the existence of an accident because of the lack of corroborating circumstances.  It specifically points to Dr. Steiner's opinion that the medical records do not contain any objective indicia of injury to Ms. Hebert and that a finding of pain is subjective, depending on the accuracy of the information the patient is provides.

The WCJ found this argument unpersuasive and, in her written reasons, enumerated in detail the evidence in the medical records supporting her finding in favor of Ms. Hebert.  The Touro and VA records list similar diagnoses of ankle and back sprains.[7]  Dr. Rodriguez diagnosed Ms. Hebert with lumbosacral and thoracic

---

[6] The WCJ also cited to Mr. Terluin's inconsistent recollection of the location of Ms. Mosbacher during the accident and that Ms. Hebert indicated he instructed her to put bread that fell on the floor back on to the rack.  The WCJ reasoned that Mr. Terluin would have an interest in concealing this information from Fresh Market.

[7] Dr. Bostick agreed with the diagnosis of a left ankle sprain.

10

facet syndrome and related those injuries to the September 12, 2017 accident.[8] Dr. Rodriguez further opined it was rare to find objective indicia of facet syndrome. He relied on Ms. Hebert's narrative history and the subjective reports of pain elicited when he stressed her facet joints. Dr. Rodriguez also noted it was uncommon to find facet syndrome in a person as young as Ms. Hebert absent some traumatic injury. The WCJ additionally observed that Ms. Hebert's prior ankle injury had resolved itself prior to the accident such that she was able to perform all of her duties at Fresh Market. *See Merrill v. Greyhound Lines, Inc.*, 2010-0834, pp. 6-7 (La.App. 4 Cir. 6/29/11), 70 So.3d 991, 995; *Marti*, 2012-1514, p. 24, 115 So.3d at 556-57.

The rule that a fact finder's credibility determination between witnesses can virtually never be manifestly erroneous "'applies equally to the evaluation of expert testimony, including the evaluation and resolution of conflicts in expert testimony.'" *Leidelmeijen v. Ferncrest Manor Nursing Home*, 2015-1216, p. 19 (La.App. 4 Cir. 3/16/16), 191 So.3d 38, 51 (quoting *Bellard v. Am. Cent. Ins. Co.*, 2007-1335, 2007-1399, p. 27 (La. 4/18/08), 980 So.2d 654, 672). This is true "even when the decision of [a WCJ] is based upon written reports, records, or depositions." *Buxton*, 2009-0520, pp. 18-19, 23 So.3d at 287. In finding in favor of Ms. Hebert, the WCJ emphasized she gave greater weight to the opinions of Ms. Hebert's treating physicians over Dr. Steiner who only saw her one time, eight months after the accident. *See Hahn v. X-Cel Air Conditioning, Inc.*, 2012-0236, pp. 6-7 (La.App. 4 Cir. 1/9/13), 108 So.3d 262, 267. The WCJ also questioned the credibility of Dr. Steiner's opinion emphasizing that Dr. Steiner had changed it based on the "incorrect" affidavit of Mr. Terluin.

---

[8] It is undisputed that Ms. Hebert had no prior history of back injuries.

In many workers' compensation cases, the credibility of the history given by the employee to her physicians becomes as important as the medical opinions based on that history. *Guy v. Kelps & Will Prop Shop*, 2018-0956, p. 8 (La.App. 1 Cir. 2/26/19), 272 So.3d 570, 576. In such cases, the plaintiff's credibility may determine the outcome. *See Marti*, 2012-1514, p. 24, 115 So.3d at 557. As the WCJ stated in her written reasons, her decision "largely hinged on the credibility of Ms. Hebert and Mr. Terluin." Implicit in her determination that Mr. Terluin's credibility was lacking was that Ms. Hebert made the more credible witness. The WCJ noted numerous times that Ms. Hebert's reporting of her version of the accident was consistent throughout her initial report to her employer, her narrative to her treating doctors, and her testimony during trial. The WCJ additionally relied on Ms. Hebert's subjective reports of the pain she was experiencing despite Dr. Steiner's revised conclusion (based on Mr. Terluin's affidavit) that there were no objective indicia of injuries. Notably, Dr. Steiner conceded that if he were to assume Ms. Hebert's subjective complaints of pain were true, he could say that, more probably than not, the accident caused her back pain.

"'Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.'" *Payton v. Sears, Roebuck and Co.*, 2015-0311, p. 9 (La.App. 4 Cir. 2/17/16), 187 So.3d 84, 88-89 (quoting *Stobart*, 617 So.2d at 882). When disposition of a case hinges on a credibility determination, our Supreme Court has been reluctant to find manifest error absent "documents or objective evidence [that] so contradict the witness's story, or the story itself is so inconsistent or implausible on its face that a reasonable fact finder would not credit

the witness's story." *Rosell*, 549 So.2d at 844-45. We do not find this to be the case here. Based on our review of the record, the WCJ's finding of the existence of an accident was not manifestly erroneous. Thus, Fresh Market's first assignment of error is without merit.

**ASSIGNMENT OF ERROR #2: TEMPORARY TOTAL DISABILITY BENEFITS**

When an injury produces a temporary total disability precluding a worker from engaging in occupation for wages, the injured worker is entitled to TTD benefits of sixty-six and two-thirds percent of wages during the period of such disability. La. R.S. 23:1221(1)(a). The statute provides these benefits "shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment." La. R.S. 23:1221(1)(c). "The clear and convincing standard requires a party to prove the existence of a contested fact is highly probable, or much more probable than its non-existence." *Iberia Medical Center v. Ward*, 2009-2705, p. 16 (La. 11/30/10), 53 So.3d 421, 432.

An employee seeking TTD benefits must introduce "objective medical evidence" to sustain her claim. *Marti*, 2012-1514, p. 30, 115 So.3d at 560. In determining whether a claimant has met her burden, a WCJ must weigh both medical and lay evidence. *Id.*, 2012-1514, pp. 30-31, 115 So.3d at 560.

The WCJ found Ms. Hebert was entitled to TTD benefits from November 7, 2017 through May 1, 2018. Fresh Market relies on the same principal argument as to TTD benefits that it advanced as to the occurrence of an accident: no objective evidence exists, let alone clear and convincing evidence, that Ms. Hebert's temporary disability precluded her from employment. Dr. Steiner opined that, even assuming Ms. Hebert sustained injuries, the potential disability period for a

13

thoracic sprain would be four to twelve weeks, and the potential disability period for an ankle sprain would be six to twelve weeks.

As we previously discussed, the WCJ did not err in her credibility determination favoring the opinion of Dr. Rodriguez over the opinion of Dr. Steiner. Dr. Rodriguez kept Ms. Hebert on no duty work status until May 1, 2018. In his deposition, Dr. Rodriguez explained that during this time period Ms. Hebert had dramatic limitations on her abilities to walk, stand, and lift. When asked whether she could perform any type of work as a secretary, musical performer, or baker; Dr. Rodriguez stated he did not think she would be able to from the time of the accident to May 2018.

The WCJ was keenly aware of the heightened clear and convincing standard as she determined that Ms. Hebert failed to carry her burden of proving temporary total disability between the date of her accident and November 2017 when first seen by Dr. Rodriguez. During that timeframe, neither Touro nor the VA excused Ms. Hebert from work. The WCJ rejected Dr. Rodriguez's opinion covering this same timeframe because he was not Ms. Hebert's treating physician until November 2017. Based on this distinction, the WCJ limited the award of TTD benefits for the period where Ms. Hebert was under the treatment of Dr. Rodriguez. Thus, we find this assignment of error is without merit.

### ASSIGNMENT OF ERROR #3: SUPPLEMENTAL EARNINGS BENEFITS

The purpose of SEBs is to provide compensation to an injured employee for her lost wage-earning capacity. *Doane v. Omni Royal Orleans Hotel*, 2016-0144, p. 5 (La.App. 4 Cir. 10/26/16), 204 So.3d 615, 618. A claimant is entitled to supplemental earnings benefits if, as a result of a work-related injury, she is unable to earn at least ninety percent of her pre-injury wages. *Id.* The claimant bears the

14

initial burden of proving, by a preponderance of the evidence, that the injury resulted in her inability to earn at least ninety percent of her pre-injury wage under the facts and circumstances of the individual case. *Id*., 2016-1044, p. 5, 204 So.3d at 619.

Once a claimant has established a prima facie case of entitlement, the burden then shifts to the employer to show, by a preponderance of the evidence, that: 1) the employee is physically able to perform a certain job; and 2) the job was offered to the employee or that the job was available to the employee in her or the employer's community or reasonable geographic region. *Id*., 2016-1044, p. 6, 204 So.3d at 619; La. R.S. 23:1221(3)(c)(i). "[I]f the employer is successful in sustaining its burden, the burden shifts back to the employee to show by clear and convincing evidence, unaided by any presumption of disability, that she is unable to perform the employment offered solely as a consequence of substantial pain." *Id*.

The WCJ awarded SEB benefits for the months of May, June, and July of 2018. Fresh Market argues Ms. Hebert did not meet her burden of making a prima facie case that she was unable to earn ninety percent of her pre-injury wage during that time period. Further, that she failed to submit Form 1020 documenting any earnings she did make during the pendency of her claim.

The WCJ determined Ms. Hebert met her burden of establishing a prima facie case relying on the opinions of Ms. Hebert's treating physicians over the opinion of Dr. Steiner. Commenting on her back issues, Dr. Rodriguez stated Ms. Hebert could transition to light duty work starting in May 2018; however, he deferred to Dr. Bostick regarding Ms. Hebert's ankle issues. Dr. Bostick's May 17, 2018 report noted Ms. Hebert was capable of light duty work but that she

15

should refrain from prolonged standing, climbing or the use of ladders.  Further, although Ms. Hebert did not submit Form 1020, she testified to being paid for approximately half a dozen one-day acting jobs and the respective amounts she received.  Once Ms. Hebert met her prima facie burden, the burden then shifted to Fresh Market to show that Ms. Hebert was physically able to perform a certain job and that such a job was offered or otherwise available to her in a reasonable geographic region.  Fresh Market and Gallagher Bassett did not offer alternative work to Ms. Hebert nor offered vocational rehabilitation.

The WCJ awarded $729.68 for the month of May.  Factoring in the wages Ms. Hebert received for her acting jobs, the WCJ reduced the award of SEB benefits to $301.83 for June and July of 2018.  We find no error in these awards; thus, this assignment of error is without merit.

### ASSIGNMENT OF ERROR #4: PENALTY AND ATTORNEY'S FEES ON THE MOTION TO COMPEL; SUPERVISORY WRIT ON MOTION FOR CONTEMPT

The second supervisory writ filed by Fresh Market sought review of the January 14, 2019 judgment by the WCJ finding Fresh Market in contempt for failure to authorize payment for the initial evaluation with Dr. Bostick pursuant to a May 7, 2018 order.  Although dated January 14, 2019, the judgment had a notice of signing date of January 30, 2019 and was not mailed until February 15, 2019.  On review, this Court found the contempt judgment to be a final appealable judgment and granted the writ for the limited purpose of remanding the matter to the WCJ to consider the notice of intent as a timely filed motion for appeal. *Hebert v. The Fresh Market, Inc.*, 2019-0346 (La.App. 4 Cir. 5/13/19) (unpub.) (citing *Jackson v. M.R. Pittman, L.L.C.*, 08-0966, p.5, (La. App. 4 Cir. 2/11/09), 5 So.3d 906, 911).

16

On June 28, 2019, this Court denied Fresh Market's "Motion to Supplement Appellate Record and Consolidate Issues on Appeal." The underlying writ had been disposed of and, at the time of the filing of Fresh Market's motion, there was no pending appeal on the penalty assessed related to the motion for contempt. As such, this portion of Fresh Market's fourth assignment of error, challenging the $5,000 penalty on the motion for contempt, is not properly before us on appeal.

Fresh Market additionally contends that the WCJ erred in awarding penalties and attorney's fees associated with Ms. Hebert's motion to compel the choice of Dr. Bostick as her lower extremity specialist. Awards of penalties and attorney's fees in workers' compensation cases are penal in nature and penalty statutes must be strictly construed. *Bell v. Mid City Printers, Inc.*, 2010-0818, p. 15 (La.App. 4 Cir. 12/22/10), 54 So.3d 1226, 1236. The decision to impose penalties and attorney's fees are a factual issue subject to the manifest error standard of review. *Id*.

Statutory penalties and attorney's fees are authorized by La. R.S. 23:1201(F) when an employer fails to provide payment for an employee's medical treatment or fails to consent to an employee's request to select a treating physician. However, these penalties shall not apply if a claim is reasonably controverted. La. R.S. 23:1201(F)(2). An employee's right to an initial evaluation with a physician of their choice is mandated by La. R.S. 23:1121(B)(1). The statute provides, in pertinent part:

> The employee shall have the right to select one treating physician in any field or specialty.

* * *

> After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of

17

treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.

Fresh Market argues the assessment of penalties and attorney's fees are not appropriate for their refusal to pay for an initial evaluation with Dr. Bostick because Ms. Hebert was not required to seek approval to change to a treating physician in another specialty.[9] Fresh Market concludes since the WCJ found it reasonably controverted the claim on the merits, the same result should apply to Fresh Market's denial of compensation for the initial evaluation with Dr. Bostick.

In her written reasons, the WCJ, relying on *Nelson v. Windmill Nursery of Louisiana, LLC*, 2004-1941, p. 4 (La.App. 1 Cir. 9/23/05), 923 So.2d 709, 712, stated that "causation of the alleged accident is not an issue in determining whether an employee has been deprived of the right to see a treating physician of her choice." Similarly, Ms. Hebert argues that the WCJ's finding that Fresh Market reasonably controverted the issue of compensability after the trial on the merits, does not allow it to retroactively controvert Ms. Hebert's initial evaluation with Dr. Bostic thus justifying Fresh Market's refusal to pay for it. We agree.

The penalties and attorney's fees assessed by the WCJ associated with the motion to compel were attributable to Fresh Market's failure to fulfill its threshold statutory duty that affords Ms. Hebert the right to see a treating physician for her ankle. *See Id.*, 2009-1941, p. 6, 923 So.2d at 713. Despite the fact that no authorization was needed, Fresh Market's failure to pay frustrated Ms. Hebert from exercising her right under La. R.S. 23:1121(B)(1). Thus, we find the WCJ did not

---

[9] As argued by Ms. Hebert in her motion to compel, the statute grants the right to a treating physician in "any field *or* specialty." La. R.S. 23:1121(B)(1) (emphasis supplied). Dr. Rodriguez and Dr. Bostick, while both orthopedists, practice in different specialties.

err in awarding penalties and attorney's fees associated with the motion to compel. This assignment of error is without merit.

### ASSIGNMENT OF ERROR #5: FORFEITURE OF BENEFITS

Pursuant to La. R.S. 23:1208, it is unlawful for a claimant to willfully make false statements for the purpose of obtaining workers' compensation benefits. *Baker v. Harrah's*, 2015-0229, p. 32 (La.App. 4 Cir. 3/9/16), 190 So.3d 379, 399. In addition to criminal and civil penalties, the statute provides that any employee found in violation shall, upon determination by a WCJ, forfeit their rights to any benefits. La. R.S. 23:1208(E). Statutory forfeiture is a harsh remedy and must be strictly construed. *Baker*, 2015-0229, p. 32, 190 So.3d at 399 (quoting *Bell*, 2010-0818, p. 17, 54 So.3d at 1237-38). Consequently, inadvertent or inconsequential statements will not give rise to a finding of a willful misstatement, triggering statutory penalties. *Id*. The issue of whether an employee has forfeited her rights to benefits is a factual determination that should not be disturbed on appeal absent manifest error. *Id*.

Fresh Market alleged, in its reconventional demand, that Ms. Hebert forfeited her benefits because she failed to disclose all of her prior ankle injuries in discovery and to its orthopedic expert, Dr. Steiner. Ms. Hebert denied this at trial. In written reasons, the WCJ noted Ms. Hebert executed a medical release which allowed Fresh Market access to any and all of her medical records. Ms. Hebert also reported her prior ankle injuries to her treating physicians and acknowledged the injuries in her trial testimony.

The WCJ observed that Ms. Hebert was not good at recalling time and events in time due to her mental health conditions resulting from her service in Afghanistan. Such considerations are relevant to whether a claimant's alleged

19

misrepresentations are willful. *See, e.g., Keys v. Republic Services*, 2012-0252, p. 2 (La.App. 3 Cir. 10/3/12), 99 So.3d 734, 737 (claimant did not willfully misrepresent his medical history based on WCJ's finding that claimant's Huntington's disease caused dementia and/or memory loss and affects his ability to recall previous events). The WCJ concluded that while some of the statements Ms. Hebert made challenged her credibility, they did not rise to the level of willful false statements. We agree. We find the WCJ was within her discretion in denying Fresh Market's reconventional demand. Thus, this assignment of error is without merit.

### ANSWER TO APPEAL: MS. HEBERT'S REQUEST FOR ADDITIONAL ATTORNEY'S FEES

In her answer to the appeal, Ms. Hebert requests additional attorney's fees. When a defendant in a workers' compensation case appeals and obtains no relief, and the appeal necessitates additional work on the part of plaintiff's counsel, an appellate court usually awards an increase in attorney's fees. *Aisola v. Beacon Hosp. Management, Inc.*, 2013-1101, p. 17 (La.App. 4 Cir. 4/2/14), 140 So.3d 71, 82. However, as the briefing on appeal in the matter *sub judice* is largely duplicative of the briefing before the WCJ, we decline to award additional attorney's fees. *See Id*.

### DECREE

For the foregoing reasons, we deny Fresh Market's writ challenging the exclusion of Ms. Mosbacher's statement and affirm the January 30, 2019 judgment in all respects. We also deny Ms. Hebert's request for attorney's fees on the appeal.

**WRIT DENIED; JUDGMENT AFFIRMED**

20