| CEMBELL INDUSTRIES, INC. | * | NO. 2024-CA-0348 |
| & THE GRAY INSURANCE | | |
| COMPANY | * | COURT OF APPEAL |
| | | |
| VERSUS | * | FOURTH CIRCUIT |
| | | |
| KEVIN SMITH | * | STATE OF LOUISIANA |
| | * | |
| | * | |

* * * * * * *

SCJ

**JENKINS, J., CONCURS IN PART AND DISSENTS IN PART WITH REASONS.**

I concur with the majority's opinion to affirm the judgment with respect to Appellants, Cembell Industries, Inc. and The Gray Insurance Company (collectively "Cembell"). I also concur with the majority's opinion to deny the answer of Appellee, Kevin Smith, with respect to his claims that (i) the workers' compensation judge ("WCJ") improperly allowed Cembell to expand the pleadings at trial to include whether Mr. Smith was required to "buy back" his rights to workers compensation benefits; (ii) the WCJ erroneously rejected Mr. Smith's Affidavit as proof of the dollar amount of his third-party settlement for purposes of exercising his right to "buy back" any entitlement to future workers compensation benefits; and (iii) denial of Mr. Smith's request that he was entitled to an additional attorney fee award for defense of this appeal. However, I dissent from that portion of the majority's opinion which dismissed, on the basis of prematurity, Mr. Smith's argument that the WCJ erroneously denied he had proven a right to Supplemental Earnings Benefits ("SEB").

This Court explained and discussed the purpose of SEB in *Jackson v. Family Dollar Stores of Louisiana, Inc.*, 2017-0712, p. 12 (La. App. 4 Cir. 10/24/18), 358 So.3d 165, 175, as follows:

1

"The purpose of SEBs is to provide compensation to an injured employee for [her] lost wage-earning capacity." *Doane v. Omni Royal Orleans Hotel*, [20]16-0144, p. 5 (La. App. 4 Cir. 10/26/16), 204 So.3d 615, 618. An employee is entitled to SEBs if, as a result of a work-related injury, she is unable to earn at least 90 percent of her pre-injury wages. *Id.*; La. R.S. 23:1221(3)(a).

The workers' compensation judgment denying Mr. Smith's SEB claim provided the following:

> **IT IS FURTHER ORDERED, ADJUDGED and DECREED** that claimant, Kevin Smith, has not proven that he is currently disabled from work or unable to earn ninety (90%) of his pre-injury wages due to the work accident.

> **IT IS FURTHER ORDERED, ADJUDGED and DECREED** that plaintiffs, Cembell Industries, Inc. and The Gray Insurance Company [have] proven that the claimant, Kevin Smith, has a post-accident wage earning capacity of $1733.33 per month and that earning capacity was effective August 28, 2019 until present. The plaintiffs are entitled to a credit for the overpayment of benefits during the period of August 28, 2019 until the termination of benefits on January 23, 2020.

In its written reasons for judgment regarding the denial of SEB, the WCJ explained that the parties stipulated that Mr. Smith's treating physician had "released him back to work in a modified status—light duty/sedentary with restrictions on lifting, standing, sitting and bending." The WCJ's written reasons also referenced that Cembell's vocational rehabilitation counselor had located two jobs which were approved by the treating physician, reiterated that Cembell had established that Mr. Smith had a post-accident wage earning capacity of $1,733.33 per month, and noted that Cembell was entitled to a credit for its overpayment of benefits.

The appropriate standard of review for determining whether the workers' compensation court erred in awarding benefits is the manifest error or clearly wrong standard. *See Jackson v. Family Dollar Stores*, 2017-0712, p. 5, 258 So.2d at 172. In a SEB claim, the initial burden of proof rests with the employee to prove by a preponderance of the evidence that the work-related injury resulted in the

2

employee's inability to earn at least 90% of the employee's pre-injury wages. *See Jackson v. Family Dollar Stores*, 2017-0712, p. 12, 258 So.3d at 175.

Here, the evidence offered at trial established that Mr. Smith's pre-accident weekly wages amounted to $1,113.98 and his physician had released him to return to work with modified restrictions. The WCJ also found that Cembell located jobs that fit within those restrictions and proved that Mr. Smith had a post-accident wage earning capacity of $1,733.33 per month. However, a monthly wage of $1,733.33 translates to an average weekly wage of $400.00.[1] As Mr. Smith had a stipulated pre-accident average weekly wage of $1,113. 98, a post-accident average weekly wage of $400.00 proved Mr. Smith's entitlement to SEB based on his inability to earn 90% of his pre-accident wages.[2] Accordingly, the WCJ committed manifest error and was clearly wrong in its finding that Mr. Smith failed to prove that his compensation accident and injury resulted in a loss of wage earning capacity to qualify Mr. Smith for SEB payments.

The majority cites *Coolman v. Glob. Torque Turn, Inc.*, 1993-664 (La. App. 3 Cir. 2/2/94), 631So.2d 106, 110, in dismissing Mr. Smith's claim for SEB as premature because Mr. Smith's unauthorized third-party settlement forfeited his right to any additional benefits pursuant to La. R.S. 23:1102(B).[3] Consequently,

---

[1] $1,733.33 x 12=$20,799.96 ÷52=$400.00.

[2] $1,113.98 x .90=$1,002.58.

[3] La. R.S. 23: 1102 (B) provides the following:

> If a compromise with such third person is made by the employee or his dependents, the employer or insurer shall be liable to the employee or his dependents for any benefits under this Chapter which are in excess of the full amount paid by such third person, only after the employer or the insurer receives a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim and only if written approval of such compromise is obtained from the employer or insurer by the employee or his dependent, at the time of or prior to such compromise. Written approval of the compromise must be obtained from the employer if the employer is self-insured, either in whole or in part. If the employee or his dependent fails to notify the employer or insurer of the suit against the third person or fails to obtain written approval of the compromise from

the majority reasons that any consideration of his right to future compensation benefits is premature, contingent upon his compliance with the statutory buy-back provision of La. R.S. 23:1102(B).

In *Coolman*, 1993-664, 631 So.2d at 105-06, as in the present matter, the employee entered a third-party tort settlement without obtaining written approval from the insurer or the employer; and thereafter, filed a disputed compensation claim after his benefits were terminated. The hearing officer found that the employee had forfeited his right to future compensation benefits pursuant to La. R.S. 23:1102(B). Accordingly, the hearing officer concluded that because the employee had not utilized the buy back provision of La. R.S. 23:1102(B) prior to filing his disputed claim for compensation, his claim was premature. *Id.*, 1993-664, 631 So.2d at 106. The appellate court affirmed the judgment. *Id.*, 1993-664, 631 So.2d at 110.

However, I find the *Coolman* decision distinguishable from the present matter in one important respect. In *Coolman*, the WCJ dismissed the employee's claim for additional compensation benefits as premature. There was no substantive ruling on the merits of his claim for additional compensation. In contrast, the WCJ herein rendered a judgment on the merits. The judgment decided that Mr. Smith was not entitled to SEB because he had not proven a loss of wage earning capacity; and moreover, found Cembell was entitled to a credit for the overpayment of

---

the employer and insurer at the time of or prior to such compromise, the employee or his dependent shall forfeit the right to future compensation, including medical expenses. Notwithstanding the failure of the employer to approve such compromise, the employee's or dependent's right to future compensation in excess of the amount recovered from the compromise shall be reserved upon payment to the employer or insurer of the total amount of compensation benefits, and medical benefits, previously paid to or on behalf of the employee, exclusive of attorney fees arising out of the compromise; except in no event shall the amount paid to the employer or insurer exceed fifty percent of the total amount recovered from the compromise. Such reservation shall only apply after the employer or insurer receives a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim.

benefits. As I find the WCJ's SEB judgment was manifestly erroneous based on Mr. Smith's proven pre-accident and post-accident wages, I would reverse that portion of the judgment.

However, notwithstanding that Mr. Smith proved a loss of wage earning capacity, his unauthorized third-party settlement nonetheless caused him to forfeit his right to additional compensation. As such, the issue of his actual receipt of any SEB payments is premised on whether his compliance with the buy-back provision of La. R.S. 23: 1102(B) entitles him to a resumption of compensation benefits. Accordingly, I would remand to the WCJ for further proceedings to determine Mr. Smith's entitlement to receive SEB upon Mr. Smith's exercise of his statutory buy-back rights.

Based on the foregoing reasons, I concur in part and dissent in part.